RYAN v. ALEXANDER, Formerly Collector of Internal Revenue.

No. 2192.

Circuit Court of Appeals, Tenth Circuit.

March 18, 1941.

Charles H. Garnett, of Oklahoma City, Okl. (W. K. Garnett, of Oklahoma City, Okl., on the brief), for appellant.

Warren F. Wattles, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and William L. Cary, Sp. Assts. to Atty. Gen., and Charles E. Dierker, U. S. Atty., of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, MURRAH, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

Thomas Ryan brought this action against Alexander, formerly Collector of Internal Revenue for the District of Oklahoma, to recover upon a claim for refund of income taxes. During the pendency of the action Ryan died and May Ryan, as executrix under his will, was substituted as party plaintiff.

Prior to 1923, Ryan acquired title to the North Half and the Northwest Quarter of the Southeast Quarter of Section 2, Township 9 North, Range 9 East, in Hughes County, Oklahoma. The land had no oil or mineral value when acquired. In March,

1920, he executed an oil and gas lease covering the West Half of the Northwest Quarter and the Southeast Quarter of the Northwest Quarter of Section 2. This lease was owned by Wittmer Property Trustees, a business trust, throughout 1923 and 1924. In December, 1923, Ryan executed an oil and gas lease on the Northeast Quarter of the Northwest Quarter of Section 2 to O. F. Cashdollar. The lease provided that it would be void unless a well should be drilled to a depth of 3500 feet on the Southwest Quarter of the Southeast Quarter of Section 35, Township 10 North, Range 9 East, Okfuskee County, Oklahoma, unless oil should be found in paying quantities at a lesser depth, and that the lease should be delivered when the well had been drilled to a depth of 3000 feet, or when oil was found if discovered at a lesser depth.

The lease reserved a one-eighth royalty. It was placed in escrow in the American National Bank at Wetumka, Oklahoma, under the provision of a written escrow statement directing the bank to deliver it to the lessee when the well had been drilled to a depth of 3000 feet, or when oil was found if discovered at a lesser depth. Cashdollar took the lease as the agent of Wittmer Property Trustees and for the benefit of the trust. On March 29, 1924, Wittmer Property Trustees entered into a contract with T. B. Slick whereby, in consideration of a one-half interest in the leases of Wittmer Property Trustees covering the Northeast Quarter of Section 35, Township 10 North, Range 9 East, the South Half of the Southeast Quarter of Section 35, Township 10 North, Range 9 East, and in the lease first above-mentioned, he agreed to drill a well in the Southwest Quarter of the Southeast Quarter of Section 35 to the Papoose Sand found at approximately 3500 feet, unless oil should be found in paying quantities at a lesser depth, and to commence such well not later than April 17, 1924, and to complete it by September 1, 1924. Slick completed the well on August 16, 1924. Its initial production was 1200 barrels per day. In a few days, the production increased to about 2500 barrels per day. On June 28, 1924, the lease from Ryan to Cashdollar was delivered by the bank to the lessee. The well was located 320 feet north of the south line and 320 feet east of the west line of the Southwest Quarter of the Southeast Quarter of Section 35. It was an offset to the Ryan land and evinced a strong probability that oil would be found in paying quantities in the North

Half of Section 2, and greatly increased its market value.

On August 18, 1924, two days after the well came in, Ryan executed and delivered an oil and gas lease on the West Half of the Northeast Quarter of Section 2 to the Independent Oil and Gas Company for a bonus of $80,000, reserving a one-eighth royalty. On September 18, 1924, 33 days after the well came in, Ryan executed and delivered to the Independent Oil and Gas Company an oil and gas lease on the East Half of the Northeast Quarter of Section 2 for a bonus of $100,000, of which $60,000 was paid in cash, and $40,000 was to be paid out of one-half of the first oil produced from the leased premises. On September 24, 1924, 39 days after the well came in, Ryan executed and delivered to the Skelly Oil Company an oil and gas lease on the Northwest Quarter of the Southeast Quarter of Section 2 for a cash bonus of $20,000. Ryan paid broker's commissions on the sale of these leases, amounting to $10,000. During 1924, but after the last two above-mentioned leases were given, five producing wells were brought in on Ryan's land and other wells were drilling.

On March 16, 1925, Ryan filed with Alexander, Collector, his income tax return for the year 1924 in which he reported $43,254.33 received from oil and gas royalties, and $190,000 received as net bonuses from the sale of oil and gas leases. He reported the $190,000 as gain on the sale of capital assets held more than two years. He also reported as gain from business $9,883.57. His tax liability as computed on his return was $25,731.12, which was paid in due course.

$8,391.69 of the $40,000 in oil payment was received December 12, 1924. The balance thereof was received in January, 1925. $27,135.11 of the amount reported as oil royalties was received in 1924. The balance was received in January, 1925. Hence, the amounts reported for 1924 were $47,727.53 in excess of the income actually received in that year.

During the years 1924 to 1937, inclusive, Ryan employed Tom F. Carey, a certified public accountant, to prepare his tax returns and represent him in tax matters. On April 15, 1925, Carey wrote the Collector at Oklahoma City requesting a ruling on whether the bonuses were properly taxable as capital gains. Harry A. Sproles, a Deputy Collector of Internal Revenue, made an ex-

amination of the Ryan return, prepared an amended return and presented it to Ryan for his signature. Ryan refused to sign it. In the amended return the $190,000 was treated as ordinary gain. This resulted in a proposed additional tax of $47,514.59 and $108.90 interest.

Carey testified that he told Sproles in April, 1925, that the 1924 return included some income received in 1925; that he also called that fact to the attention of Revenue Agent, V. V. Hardcastle, in the early part of 1928. Sproles testified that he had no recollection of any such statement made by Carey, that it was not covered in his written report, and that it would have been dealt with had the facts been brought to his attention.

In making his report on Form O, filed in May, 1928, Carey again reported the amounts received in January, 1925, as income for 1924, and claimed a depletion deduction based thereon.

Ryan did not file an amended return or otherwise formally call to the attention of the Collector or the Commissioner the fact that the 1924 return included items received in 1925 until April, 1933, when he filed a claim for refund of the taxes collected on such amounts. Taxation thereof for 1925 was then barred by the statute.

On December 26, 1928, a 60-day letter giving notice of a deficiency was duly mailed to Ryan in care of Carey. It was undelivered. A second letter giving notice of a deficiency for 1924 of $36,743.62 was mailed to Ryan in care of Carey on January 15, 1929. The latter letter was delivered in due course of mail. On March 11, 1929, Ryan filed an appeal from the Commissioner's determination to the Board of Tax Appeals. On October 1, 1929, Carey, acting as agent for Ryan, forwarded to the Collector at Oklahoma City a draft for $36,500, accompanied by a letter stating that it was for the credit of Ryan and to apply against a proposed additional assessment for the year 1924, and that the payment was made to stop the accumulation of further interest while the matter was pending decision, in the event the decision should be adverse. The Commissioner was informed of the payment and on November 23, 1929, assessed the sum of $36,500, with interest to the date of payment in the sum of $9,-135.73. Ryan was advised by the Commissioner that the assessment was made "to clear your account of the payment report-

ed," but that it would not "change the status of the case which is pending action before" the Board of Tax Appeals. Demand was made for the interest and it was paid under protest on December 10, 1929. Ryan took no action by a proceeding in court or otherwise to enjoin the collection of any part of the interest assessed.

On September 26, 1932, the Board of Tax Appeals sustained the motion of the Commissioner to dismiss the appeal, confessed by counsel for the taxpayer, upon the ground the Board was without jurisdiction, since the appeal was not filed within 60 days from the mailing of the first notice of deficiency.

On April 7, 1933, the taxpayer filed with the Collector a claim for a refund. On October 1, 1933, and on November 5, 1933, amended claims were filed which amplified the grounds stated in the original claim. The claim for refund was based on the inclusion in the 1924 return of income actually received in 1925, discovery depletion on oil bonuses received in 1924, based on the discovery well in Section 35, and the making of the assessment of the deficiency in November, 1929, while the appeal was pending before the Board of Tax Appeals. In June, 1936, the Commissioner made a certificate of overassessment and the claim for refund was allowed to the extent of $6,065.27, with interest in the sum of $1,-518.10, and was otherwise rejected.

The trial court found that neither Ryan nor Carey had advised the Collector or the Commissioner, prior to the filing of the claim for refund, that the 1924 return included the items received in 1925, and that the executrix was estopped to recover the taxes assessed on those items; that she was not entitled to discovery depletion; and that the assessment of the deficiency tax before the appeal was dismissed but after the voluntary payment, was not a void assessment. From a judgment for the Collector, the executrix has appealed.

The finding of the trial court, that Ryan did not advise the Collector or the Commissioner prior to 1933 that the 1924 return included income received in 1925, was not clearly erroneous. We seriously doubt that Carey knew, prior to May, 1928, that the 1924 return included income received in 1925. Carey, in his letter of April 15, 1925, to the Collector, called attention to the fact that the taxpayer reported the bonuses as capital gain from the sale of assets held

more than two years, and, in that respect, it conflicted with the Bureau's ruling I T 2077, III-38-1789, and asked a specific ruling thereon. It is inconceivable that Carey, a certified public accountant experienced in tax matters, would not have called attention at that time to the error in the return, had he had knowledge thereof. Furthermore, Carey again reported the amounts as 1924 income in Form O, filed in May, 1928.

■ The Commissioner had the right to accept Ryan's sworn return as to the amount of 1924 income. He was not called upon to audit Ryan's books and records or the books and records of the oil companies. Only through such an audit could he have discovered the error. See Commissioner v. Liberty Bank & Trust Co., 6 Cir., 59 F.2d 320, 325.

■ Ryan included amounts received in January, 1925, in his 1924 return. He did not include such amounts in his 1925 return. At the time the claim for refund was filed, the assessment of such amounts as income for 1925 was barred by the statute. The Collector and Commissioner accepted the amount of income reported for 1924 as correct and acted in reliance on the return. These facts, in our opinion, estopped the executrix from claiming a refund on the ground that the amounts were actually received in 1925.[1]

■ Furthermore, an action to recover a tax erroneously paid is in the nature of a common law action for money had and received and like it is governed by equitable principles.[2] In such an action the plaintiff must recover by virtue of a right measured by equitable standards and it is open to the defendant to show any state of facts which, according to those standards, would deny the right.[3] The fact that the right to assess the income for 1925 is barred by statute does not preclude a defense, asserted not as a setoff or counterclaim, but as an equitable reason, growing out of the circumstances of the erroneous payment, why the refund should not be granted.[4]

Ryan's income for 1924, including the amounts received in January, 1925, and reported as 1924 income, was $192,461.22. His income for 1925, exclusive of the amounts received in January, 1925, and reported as 1924 income, was $194,524.62. Because the rates applicable in 1925 were less than the rates applicable in 1924, the return of the amounts received in January, 1925, as 1924 income resulted in a greater tax being imposed upon Ryan. Whether he would have been entitled to a refund of the difference we do not undertake to determine. Ryan did not present to the Commissioner nor to the trial court, and has not urged here, a claim of right to recover the difference between the amount of tax that was imposed under the 1924 rates on income received in 1925 and reported as 1924 income and the amount of tax that would have been assessed under the 1925 act, had such income been reported for 1925.

Since the mineral property had no cost value, the claim for depletion is predicated on Sec. 204(c) of the Revenue Act of 1924, 43 Stat. 260, 26 U.S.C.A.Int.Rev.Acts, page 10, which in part reads as follows:

"* * * in the case of mines, oil and gas wells, discovered by the taxpayer after February 28, 1913, and not acquired as the result of purchase of a proven tract or lease, where the fair market value of the property is materially disproportionate to the cost, the basis for depletion shall be the fair market value of the property at the date of discovery or within thirty days thereafter; * * *."

Article 222(1) (3), Regulations 65, promulgated pursuant to § 214(a) (9) of

---

[1] See Adler v. Commissioner, 5 Cir., 77 F.2d 733;

Lofquist Realty Co. v. Commissioner, 7 Cir., 102 F.2d 945;

Bothwell v. Commissioner, 10 Cir., 77 F.2d 35;

Commissioner v. Farren, 10 Cir., 82 F. 2d 141, affirmed, 299 U.S. 617, 57 S.Ct. 108, 81 L.Ed. 456;

Commissioner v. Liberty Bank & Trust Co., 6 Cir., 59 F.2d 320, 325; Doneghy and St. Louis Union Trust Co. v. Alexander, Collector, 10 Cir., 118 F.2d 521 (decided March 6, 1941).

[2] Stone v. White, 301 U.S. 532, 534, 535, 57 S.Ct. 851, 81 L.Ed. 1265;

Lewis v. Reynolds, 10 Cir., 48 F.2d 515, affirmed 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293.

[3] Stone v. White, 301 U.S. 532, 537, 57 S.Ct. 851, 81 L.Ed. 1265;

Moses v. Macferlan, 2 Burr. 1005, 1010 (K.B. 1750);

Myers v. Hurley Motor Co., 273 U.S. 18, 24, 47 S.Ct. 277, 71 L.Ed. 515, 50 A.L.R. 1181.

[4] Stone v. White, 301 U.S. 532, 538, 539, 57 S.Ct. 851, 81 L.Ed. 1265.

the Revenue Act of 1924, 26 U.S.C.A.Int. Rev.Acts, page 23, in part reads as follows:

"For the purpose of Section 204(c) * * * an oil or gas well may be said to be discovered when there is either a natural exposure * * * or a drilling that discloses the actual and physical presence of oil or gas * * *.

"The 'property' which may be valued after discovery is the 'well.' For the purposes of these sections the 'well' is the drill hole, * * * in which the discovery was made by the drilling, and from which the production is drawn, to the limit of the taxpayer's private bounding lines, but not beyond the limits of the proven area as heretofore provided."

The claimed discovery well was not on Ryan's land. It was not discovered by Ryan, the taxpayer. It did not disclose the actual or physical presence of oil in the Ryan land. It merely indicated the probability of its presence. Under the Regulations, the property to be valued was the well to the limits of the taxpayer's private bounding lines. Here, the well relied on as a discovery well was beyond the taxpayer's boundary lines.

A taxpayer is not entitled to a depletion allowance as a matter of right.[5] A provision for depletion is an act of grace.[6] To entitle a taxpayer to depletion he must bring himself within the applicable statute providing therefor.[7]

To bring the taxpayer within § 204(c), supra, there must be a discovery by the taxpayer of the actual and physical presence of oil on the taxpayer's land. It was so held in Security-First National Bank of Los Angeles v. Welch, 9 Cir., 92 F.2d 357, 359. We conclude that the discovery relied upon did not entitle Ryan to a depletion allowance nor to a refund predicated thereon.

Sec. 274(a) of the Revenue Act of 1926, 44 Stat. 55, 26 U.S.C.A.Int.Rev.Acts, page 203, provides that when the Commissioner determines a deficiency he shall send to the taxpayer by registered mail a notice of such deficiency: that the taxpayer may, within 60 days after such notice is mailed, petition the Board of Tax Appeals for a redetermination of the deficiency; and, except as otherwise provided in subdivision (d) of § 274, that no assessment of the deficiency shall be made and no proceeding for collection shall be begun or prosecuted "until such notice has been mailed to the taxpayer, nor until the expiration of such 60-day period, nor, if a petition has been filed with the Board, until the decision of the Board has become final." It further provides that notwithstanding the provisions of § 3224 of the Revised Statutes, 26 U.S.C.A.Int.Rev.Code, § 3653(a), the making of such assessment or the beginning of a proceeding in court or by distraint for the collection of the tax may be enjoined by a proceeding in the proper court.

Sec. 274(d) of the Revenue Act of 1926 provides that the taxpayer shall at any time have the right, by a signed notice in writing filed with the Commissioner, to waive the restrictions provided in § 274(a) on the assessment and collection of the whole or any part of the deficiency.[8]

---

[5] Darby-Lynde Co. v. Commissioner, 10 Cir., 51 F.2d 32, 33;

New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348.

[6] Helvering v. Mountain Producers Corp., 303 U.S. 376, 381, 58 S.Ct. 623, 82 L.Ed. 907;

Prairie Oil & Gas Co. v. Motter, 10 Cir., 66 F.2d 309, 310;

Aldrew Oil & Gas Co. v. Alexander, 10 Cir., 70 F.2d 160, 161;

Champlin v. Commissioner, 10 Cir., 78 F.2d 905, 909;

Weber Flour Mills Co. v. Commissioner, 10 Cir., 82 F.2d 764;

Hurley v. United States, D.C.Okl., 10 F.Supp. 365, 367.

[7] Darby-Lynde Co. v. Commissioner, 10 Cir., 51 F.2d 32, 33;

Prairie Oil & Gas Co. v. Motter, 10 Cir., 66 F.2d 309, 310;

Weber Flour Mills Co. v. Commissioner, 10 Cir., 82 F.2d 764, 765;

Hurley v. United States, D.C.Okl., 10 F.Supp. 365, 367;

New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348.

[8] In referring to Sec. 274(d), the House Report on the bill (H. R. No. 1, 69th Cong., 1st Sess., 1939-1 Cum. Bull. [Part 2] 352) states:

"In order to permit the taxpayer to pay, the tax and stop the running of interest, the committee recommends in section 274 (d) of the bill that the taxpayer at any time be permitted to waive in writing the restrictions on the Commissioner against assessing and collecting the tax, but

■ The first deficiency notice was forwarded by registered mail addressed to Carey at 709 Braniff Building, Oklahoma City, his correct address. Carey was the duly authorized agent of Ryan in charge of his income tax matters. The notice was returned to the Commissioner undelivered due to Carey's absence from Oklahoma City. Ryan's petition for appeal to the Board of Tax Appeals was not filed until after the 60-day period from the mailing of the first deficiency notice had expired. Filing of the petition for appeal within the 60-day period was a jurisdictional requirement.[9] We are of the opinion that the provision "nor, if a petition has been filed with the Board, until the decision of the Board has become final" means a petition filed within the 60-day period conferring jurisdiction upon the Board to render a final decision respecting the deficiency. It follows that the abortive effort to appeal to the Board of Tax Appeals did not operate as a stay and that the Commissioner had power to make the deficiency assessment, the 60-day period from the giving of the notice having expired before the assessment was made.

■ The assessment was made after Ryan had forwarded to the Collector a draft for $36,500, accompanied by a letter requesting that it be applied as a credit against a proposed additional assessment to stop the accumulation of interest, and the assessment was in the exact amount of the draft. We are of the opinion that the payment was a voluntary payment and that the letter amounted to a waiver under § 274(d).

■ Furthermore, if the appeal to the Board of Tax Appeals operated as a stay, the assessment was not void but merely premature and irregular and it became effective when the appeal was dismissed.[10]

■ Finally, this is an action to recover a tax. The executrix must recover by virtue of a right measured by equitable standards. It was incumbent upon her to show that Ryan did not owe the tax. It was not sufficient to establish that the tax was prematurely assessed. See Van Antwerp v. United States, 9 Cir., 92 F.2d 871; Lewis v. Reynolds, 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293. In the last cited case the court said:

"Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded."

We think it clear that Ryan was not entitled to a refund on the grounds presented to the Commissioner and the trial court.

The judgment is affirmed and the costs will be assessed against the executrix.

without taking away the right of the taxpayer to take the case to the Board. It is provided in such cases that the 6 per cent interest stops running on the thirtieth day after the filing of such waiver unless assessment is made before such time."

9 Continental Petroleum Co. v. United States, 10 Cir., 87 F.2d 91, 94, certiorari denied 300 U.S. 679, 57 S.Ct. 670, 81 L. Ed. 883;

Lewis-Hall Iron Works v. Blair, 57 App.D.C. 364, 23 F.2d 972, 974;

Chambers v. Lucas, 59 App.D.C. 327, 41 F.2d 299.

10 Lehigh Portland Cement Co. v. United States, Ct.Cl., 30 F.Supp. 217, 224–233.