**Albert G. RICH, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 16595.**

United States Court of Appeals
Fifth Circuit.

Dec. 12, 1957.

Robert M. Taylor, Philadelphia, Pa., for petitioner.

Charles K. Rice, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson, George F. Lynch, Attys., Nelson P. Rose, Chief Counsel, Rollin H. Transue, Sp. Atty., I. R. S., Washington, D. C., for respondent.

Before RIVES, TUTTLE and BROWN, Circuit Judges.

RIVES, Circuit Judge.

The sole question presented for review is whether the Tax Court properly dismissed the taxpayer's petition for redetermination of proposed deficiencies in federal income taxes [1] because not timely filed.[2]

---

1. For the calendar years 1949 to 1953, inclusive, aggregating $4,630.47 and penalties aggregating $3,036.98.

2. The pertinent statutes are:

"§ 6212. *Notice of deficiency*

"(a) *In general.*—If the Secretary or his delegate determines that there is a deficiency in respect of any tax imposed by subtitles A or B, he is authorized to send notice of such deficiency to the taxpayer by registered mail."

"§ 6213. *Restrictions applicable to deficiencies; petition to Tax Court*

"(a) *Time for filing petition and restriction on assessment.*—Within 90 days, or 150 days if the notice is addressed to a person outside the States of the Union and the District of Columbia, after the notice deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided in section 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A or B and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be;

We briefly summarize the facts as stated in the petition for review. The statutory notice of proposed deficiencies was mailed by the Commissioner on February 15, 1956 addressed to "Mr. Albert G. Rich, c/o Warden, Federal Penitentiary, Danbury, Connecticut." The taxpayer was then and still is a prisoner in that institution. On May 7, 1956, the Clerk of the Tax Court received a check for $10 from the taxpayer's attorney, Mr. Robert M. Taylor of Philadelphia, enclosed in a letter reading:

"I have indorsed my check for ten dollars payable to The Treasurer of the United States as filing fee of Mr. Albert G. Rich, formerly of Miami, Florida, who is or has mailed the Court his Petition against the Commissioner of Internal Revenue. Mr. Rich is presently an inmate of the Federal Correctional Institute at Danbury, Connecticut and could not, conveniently mail you a check as his filing fee with his petition."

In the meantime taxpayer's attorney had prepared a petition which he mailed to the taxpayer with a letter of instructions. Pursuant to such instructions, the taxpayer, on May 3, 1956, signed and executed the petition and copies thereof and turned them over to the official in charge of the prison mail room, properly addressed and with the request that they be mailed to the Tax Court by registered mail, return receipt requested, and paid the official the necessary postage. On the same day he advised his attorney of his actions and requested the attorney to send the $10 filing fee to the Tax Court.

On June 1, 1956, the Clerk of the Tax Court advised the attorney that no petition had been filed with the Tax Court by or on behalf of the taxpayer. The attorney immediately inquired from the warden's office at the federal penitentiary. By letter dated June 4, 1956, the warden informed taxpayer's attorney that a check of the mail records of his office disclosed that the petition was placed in the institutional mail room on May 3, 1956, "and inadvertently held until today," and that on that date the petition had been placed in the mail. It was received by the Clerk of the Tax Court on the next day, and the Clerk advised taxpayer's attorney that the Court had received and filed an informal petition on May 7, 1956, and an amended petition on June 5, 1956. The Commissioner moved to dismiss, insisting that the attorney's letter could not be treated as any kind of petition and that the petition was untimely in that it was filed one hundred and eleven days after the mailing of the deficiency notice.

The Tax Court sustained without opinion the respondent's motion to dismiss, based upon the premise that timely filing

nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court."

"§ 7502. *Timely mailing treated as timely filing*

"(a) *General rule.*—If any claim, statement, or other document (other than a return or other document required under authority of chapter 61), required to be filed within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws is, after such period or such date, delivered by United States mail to the agency, officer, or office with which such claim, statement, or other document is required to be filed, the date of the United States postmark stamped on the cover in which such claim, statement, or other document is mailed shall be deemed to be the date of delivery. This subsection shall apply only if the postmark date falls within the prescribed period or on or before the prescribed date for the filing of the claim, statement, or other document, determined with regard to any extension granted for such filing and only if the claim, statement or other document was, within the prescribed time, deposited in the mail in the United States in an envelope or other appropriate wrapper, postage prepaid, properly addressed to the agency, office, or officer with which the

of the petition for redetermination was jurisdictional.[3]

When the taxpayer delivered his petition to the officer in charge of the prison mail room, properly addressed to the Tax Court in Washington, D. C., with the request that it be sent by registered mail and paid the necessary postage, twelve days remained before the expiration of the ninety day period. His attorney's letter and check mailed two days later were received in the Tax Court eight days before the expiration of the statutory period. It clearly appears from the petition for review that, but for the negligence of one or more employees of the Government at the federal penitentiary, the mailing, registration and actual filing of the petition would have been well within the ninety day period. All of the equities are with the appellant.

■ The ninety day period begins when the notice of deficiency is mailed. Section 6213, quoted in footnote (2), supra. We have nevertheless held, and soundly so, we think, that a delay in delivery to the taxpayer caused by improper address of the deficiency notice "should be credited to petitioner so as to give the Tax Court jurisdiction over its petition." Arlington Corp. v. Commissioner of Internal Revenue, 5 Cir., 1950, 183 F.2d 448, 451. The holding of the Seventh Circuit in Dilks v. Blair, 1927, 23 F.2d 831, is to like effect. The Eighth Circuit in Arkansas Motor Coaches v.

Commissioner of Internal Revenue, 1952, 198 F.2d 189, 192, further held that the Government could not take advantage of a delay in filing due to the negligence either of the employees of the Post Office or of employees in the Internal Revenue Department:

"The government, through its Collector of Internal Revenue, is seeking to collect taxes due. The government, through the Post Office Department, is engaged in transporting mail for a consideration. The petitioner here has done everything in its power that could reasonably be done and is entirely without fault. The fault and negligence was manifestly that of government employees—whether employees in the mail service or employees in the Internal Revenue Department would seem to be immaterial. They were government employees and we think the government should not be permitted to take advantage of the negligence or fault of its own employees to defeat this taxpayer in its efforts to have its day in court. The government in carrying the mail is not acting in its sovereign capacity and to hold in the circumstances here disclosed that the government should not be permitted to interpose as a defense the negligence of its own employees would not frustrate the purpose of the law nor

claim, statement, or other document is required to be filed.

\* \* \* \* \*

"(c) *Registered mail.*—If any such claim, statement, or other document is sent by United States registered mail, such registration shall be prima facie evidence that the claim, statement, or other document was delivered to the agency, office, or officer to which addressed, and the date of registration shall be deemed the postmark date."

Internal Revenue Code of 1954, 26 U.S.C.A. § 6212(a), § 6213(a) and § 7502 (a) and (c).

3. In its brief, the respondent cites to support that premise: Underwriters, Inc. v. Commissioner, 3 Cir., 1954, 215 F.2d 953; Worthington v. Commissioner, 6 Cir., 1954, 211 F.2d 131; Drouin v. Commissioner, 3 Cir., 1953, 203 F.2d 953; Central Paper Co. v. Commissioner, 6 Cir., 1952, 199 F.2d 902, 903; Eppler v. Commissioner, 7 Cir., 1951, 188 F.2d 95; Di Prospero v. Commissioner, 9 Cir., 1949, 176 F.2d 76, 77; Stebbins' Estate v. Helvering, 1941, 74 App.D.C. 21, 121 F.2d 892; Ryan v. Alexander, 10 Cir., 1941, 118 F.2d 744, 750; Poynor v. Commissioner, 5 Cir., 1936, 81 F.2d 521; Lewis-Hall Iron Works v. Blair, 1928, 57 App.D.C. 364, 23 F.2d 972, certiorari denied 277 U.S. 592, 48 S.Ct. 529, 72 L.Ed. 1004; cf. Commissioner v. Gooch Milling & Elevator Co., 1943, 320 U.S. 418, 422, 64 S.Ct. 184, 88 L. Ed. 139.

thwart public policy." 198 F.2d at page 192.

Circuit Judge Johnsen, concurring in part, questioned the soundness of that holding:

"I do not believe that the Post Office Department can be regarded as part of the constituted machinery for making resort to the Tax Court. Neither the statutes, 26 U.S.C.A. Internal Revenue Code, §§ 272(a) (1), 732, nor the rules of the Tax Court purport to constitute a use of the mails as any part of the official channel for filing a petition for redetermination in that court. In this situation, I am unable to view a litigant's use of the mails for this purpose as being any different in its nature or consequence than would be his use of express service, freight service, messenger service, personal transporting, or any other means, in the transmittal of his petition to the Tax Court for filing.

"Besides this, the doctrine that a taxpayer is entitled to be relieved of any risk to his day in court from fault or negligence on the part of employees of the Post Office Department, where he has chosen to use the mails to make filing of a petition in the Tax Court, is to me fraught with implications, which I am unable here to take the time to attempt to project. To give only one readily occurring example—if delay in the filing of a petition for redetermination, occasioned by fault or negligence of the Post Office Department in the handling of such a petition in the mails, cannot affect the jurisdiction of the Tax Court, then logically litigants against the Government in other courts—the Supreme Court, the Court of Appeals, the District Court, etc.—would seem necessarily to be entitled to the same kind of jurisdictional protection in those courts." 198 F.2d at page 193.

■ Following that decision, Congress enacted Section 7502 of the Internal Revenue Code of 1954 which has been quoted in footnote (2), *supra*. The language of that section is clear, explicit, and strictly limited. It applies only if there is a postmark date or a date of registration falling within the prescribed period. The restrictive terms of the section are emphasized by its legislative history, as shown in the report of the House Committee on Ways and Means to accompany H.R. 8300:

"§ 7502. *Timely mailing treated as timely filing*

"This new section applies in the case where documents (other than returns) are mailed to the proper office within the time prescribed by the internal-revenue laws, as indicated by the postmark on the envelope, and are received by that office after such time has expired. In such case, the document is deemed timely filed.

"Since it is possible to predate postmarks where mailing machines or other devices are used, subsection (b) provides that a postmark not made by the United States post office shall be deemed the date of delivery only to the extent permitted by regulations. If the document is sent by registered mail rather than ordinary mail, the registration before the due date is prima facie evidence that the document was delivered to the proper officer, and the date of registration is deemed the date of mailing.

"This section does not apply to the filing of a document in any court other than the Tax Court." 3 U.S. Code Cong. & Adm. News, 83rd Cong. 2nd Session, 1954, p. 4583.

The report of the Senate Finance Committee is to the same effect. 3 U.S. Code Cong. & Adm. News, *supra* at page 5266. The plain and unambiguous meaning of the text of the section cannot be extended by its title or heading: "Timely mailing treated as timely filing." Brotherhood of Railroad Trainmen v.

Baltimore & O. R. Co., 1947, 331 U.S. 519, 528, 529, 67 S.Ct. 1387, 91 L.Ed. 1646; United States v. Minker, 1956, 350 U.S. 179, 185, 76 S.Ct. 281, 100 L. Ed. 185.

■ The law seems to be well settled that, in the absence of specific statutory provisions, imprisonment of a person who might otherwise become a petitioner or plaintiff will not toll in his favor a statute of limitations. 54 C.J.S. Limitations of Actions § 241; 34 Am.Jur., Limitation of Actions, § 214; Annotation 24 A.L.R.2d 611, 619. See also, Price v. Johnston, 1948, 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed. 1356; Tabor v. Hardwick, 5 Cir., 1955, 224 F.2d 526, 528.

■■ As shown by the authorities cited by the respondent (footnote 3, *supra*), the ninety day period is more than a period of limitation, and the courts have consistently held the prescribed period to be jurisdictional. Judge Walker for our Circuit made a good statement of the rule in Poynor v. Commissioner, 5 Cir., 81 F.2d 521, 522:

> " * * * A paper is filed when it is delivered to the proper official and by him received to be kept on file. Depositing a paper in the post office in time for it to reach the Board of Tax Appeals in the usual course of mail within the time allowed is not a filing of the paper with the Board. United States v. Lombardo, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897. The Board was without power to dispense on equitable grounds with the requirement of filing within the time allowed. Yturbide's Executors & Heirs v. United States, 22 How. 290, 16 L.Ed. 342. See, also, Muckelroy v. Baldwin, [8 Cir.] 70 F.2d 728."

Other theories presented by the taxpayer are not nearly so plausible and may be answered with extreme brevity:

■ (1) That the letter of the attorney, along with the $10 filing fee check, was an informal petition in itself. It was not so intended, but referred to the petition which the taxpayer either had mailed or would mail.

■ (2) That the Commissioner appointed the warden as his agent by sending the notice of deficiency to the taxpayer "c/o Warden, Federal Penitentiary, Danbury, Connecticut." That was the taxpayer's proper address and there is nothing to indicate that the Commissioner intended to appoint the warden as his agent.

■ (3) That, under Section 6213 (a), the taxpayer had 150 days to file his petition for redetermination on the theory that the notice was "addressed to a person outside the States of the Union and the District of Columbia." The federal penitentiary at Danbury, Connecticut could not be so described.

This is a hard case presenting a grossly inequitable situation, but neither the Tax Court nor this Court has any authority to relieve the taxpayer from the clear jurisdictional requirements of the law.

The decision of the Tax Court is therefore

*Affirmed.*

JOHN R. BROWN, Circuit Judge (dissenting).

That we are unanimous in our belief that this is a harsh and unfortunate result causes me to heed especially the admonition to express disagreement with diffidence.

But my difference is fundamental and needs no process of analogy or other trappings of legal reasoning for its justification. My view simply is this: Congress could have intended no such result as this.

Saying that, I have expressed in a sort of shorthand, the proposition that properly construed, this Act, conceived out of a purpose to liberalize, should not be interpreted to compel a result so beyond any Congressional expectation.

At the outset, I am not troubled by the literal wording of the Act. For

divining the Congressional purpose is more than a technique of etymology. In the process it is not even accurate to say that the statute must necessarily be construed by giving to words their ordinary meaning. For it is much more profound: the words are the vehicle to express an intent, and if that intent, otherwise discernible, would be thwarted by the natural, literal meaning of the words, literalism must be rejected.[1]

So we inquire: What was it Congress was trying to do?

I think one thing it was trying to do was to eradicate a judge-made rule which was unrealistic, if not unbecoming to a Government whose own facility (postal system) was thusly so disparaged. In several cases [2] under the prior law, courts held in substance that late arrival of an appeal timely posted did not excuse the delay because the citizen took a *risk* in using the mails, just as he would had he sent it by pony express, freight, steamboat, pirogue, or dirigible.

Congress, I believe, meant to end that. If we need search for reasons, they are

1. "There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning.[18] When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act.[19] Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole'[20] this Court has followed that purpose, rather than the literal words.[21] * * *

"18. Taft v. Commissioner, 304 U.S. 351, 359, 58 S.Ct. 891, 82 L.Ed. 1393; Helvering v. City Bank Farmers Trust Co., 296 U.S. 85, 89, 56 S.Ct. 70, 80 L. Ed. 62; Wilbur v. United States, 284 U. S. 231, 237, 52 S.Ct. 113, 76 L.Ed. 261; Crooks v. Harrelson, 282 U.S. 55, 60, 51 S.Ct. 49, 75 L.Ed. 156; United States v. Missouri Pacific R. Co., 278 U.S. 269, 278, 49 S.Ct. 133, 73 L.Ed. 322; Van Camp & Sons v. American Can Co., 278 U.S. 245, 253, 49 S.Ct. 112, 73 L. Ed. 311; Caminetti v. United States, 242 U.S. 470, 490, 37 S.Ct. 192, 61 L. Ed. 442; Pennsylvania R. Co. v. International Coal Min. Co., 230 U.S. 184, 199, 33 S.Ct. 893, 57 L.Ed. 1446.

"19. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 332, 59 S.Ct. 191, 199, 83 L.Ed. 195; Sorrells v. United States, 287 U. S. 435, 446, 53 S.Ct. 210, 414, 77 L.Ed. 413; United States v. Ryan, 284 U.S. 167, 176, 52 S.Ct. 65, 68, 76 L.Ed. 224.

"20. Ozawa v. United States, 260 U.S. 178, 194, 43 S.Ct. 65, 67, 67 L.Ed. 199.

"21. Helvering v. Morgan's, Inc., 293 U.S. 121, 126, 55 S.Ct. 60, 66, 79 L.Ed.

232; Johnson v. Southern Pacific Co., 196 U.S. 1, 14, 25 S.Ct. 158, 49 L.Ed. 363; State of Ohio ex rel. Popovici v. Agler, 280 U.S. 379, 50 S.Ct. 154, 74 L.Ed. 489; Smiley v. Holm, 285 U.S. 355, 52 S.Ct. 397, 76 L.Ed. 795; Williams v. United States, 289 U.S. 553, 53 S.Ct. 751, 77 L. Ed. 1372; Maurer v. Hamilton, supra, 309 U.S. 598, at pages 612, 615, 60 S.Ct. 726, at pages 733, 735, 84 L.Ed. 969." United States v. American Trucking Ass'ns, 310 U.S. 534, 543, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345, 1350.

2. "We * * * agree * * * that a failure to file the petition within the specified 90-day period, caused by matters over which the taxpayer has no control, such as delay in the mail service en route from the taxpayer to the Tax Court, Di Prospero v. Commissioner, [9 Cir., 176 F.2d 76] * * *, failure of airplane mail service * * * because of adverse weather conditions, Stebbins' Estate v. Helvering, [74 App. D.C. 21, 121 F.2d 892] * * *, or because of other equitable considerations, Edward Barron Estate Co. v. Commissioner, 9 Cir., 93 F.2d 751, 753, does not prevent the rule from being applicable." Central Paper Co. v. Commissioner, 6 Cir., 199 F.2d 902, 904. "It seems that the petitioners [taxpayer] made no allowance for a failure of mail to move strictly according to schedule." Poynor v. Commissioner, 5 Cir., 81 F.2d 521, 522. Cf. United States v. Lombardo, 241 U.S. 73, 36 S.Ct. 508, 510, 60 L.Ed. 897, in which it was said: "If depositing in the postoffice of the statement prescribed be required by the statute, it, of course, would satisfy the statute, but to what instant of time would it be referred and at what risk the time or delays of transportation?"

abundant. Prudent businessmen regularly use the mails; our postal system, while human and not free from errors, is nonetheless a remarkably efficient organization; and, probably most important, in the millions of transactions inherent in the American income tax system, the Government requires the use of the mails for its own actions and its own convenience would be best advanced by encouraging, not discouraging, its use.

Once Congress set out on this simple path, there arose immediately the *mechanical* problem of the *time* the act should be deemed effective. Since it was, I think, inspired to abandon the outmoded theory that the risk was on the one who chose to use the mails so that time was the time of *delivery*, Congress logically had to specify the time as that of *mailing*.

This then led to another mechanical problem: how to establish it? What more natural thing was there for Congress to do than specify as the time of mailing that reflected by the postmark? But to accept that thesis is not to assume that to Congress the vital thing was the postmark itself. The vital thing was the timely *mailing*, and for that, the usual and normal way of establishing time of mailing would be by the postmark.

This means, I think, that the overriding Congressional purpose which we should, with at least some generosity, try to effectuate was that if timely mailed, it was timely filed. As a corollary we then readily find the law and its machinery sufficiently flexible to permit proof of timely filing to be made by other *conclusive* ways where, for one reason or another, the postmark is not [3] available.

I am willing to condition the exception to those cases in which timely mailing can be *conclusively* established. I find no insurmountable problems in that concept, either in what is conclusive, or the hazard that there may be some opportunity for perjury. Our system of revenue, to the certain knowledge of Congress, rests upon a remarkable demonstration of a national inherent honesty. Building so complex a structure as it has on this foundation, I would not be surprised to think that Congress, in this limited area, had confidence in its own electorate, especially since it had erected this vast administrative machinery of the Revenue Service, Tax Court, and Federal Judiciary to guard it.

On any such reading of the statute, petitioner would have his day in court. For the record shows conclusively that he did all that he could, and that so far as he was concerned, he has timely "mailed" it when, as an inmate, he deposited it with the agents of the United States Government responsible for his mail.

I therefore respectfully dissent.

3. Following a path, word by word, in the quest of literalism leads to possibilities more harsh and ridiculous than this one. And this is not speculative fantasy. In Madison v. Commissioner, 28 T.C. ——, the Tax Court has recently held that where the envelope was mailed and delivered but no postmark was on the packet, the statute had not been satisfied. Can anyone seriously believe that Congress ever thought it was enacting that result? What will the situation be if the post mark is smudged beyond deciphering or a patently wrong stamp is used by a negligent postal clerk?