619 F.2d 548
 80-2 USTC P 9518, 6 Bankr.Ct.Dec. 874
 In re William Robert KOEHLER and Camille Parrish Koehler, Bankrupts.
William Robert KOEHLER and Camille Parrish Koehler,
Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 78-3518.
 United States Court of Appeals,
Fifth Circuit.
 June 20, 1980.
 
 Marilyn Phelan, Harold Phelan, Levelland, Tex., for plaintiffs-appellants.
 M. Carr Ferguson, Asst. Atty. Gen., Tax Div., Dept. of Justice, Gilbert E. Andrews, Chief, App. Sect., Karl Schmeidler, Joan I. Oppenheimer, Washington, D. C., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of Texas.
 Before BROWN, AINSWORTH and FRANK M. JOHNSON, Jr., Circuit Judges.
 PER CURIAM:
 
 
 1
 Affirmed on the basis of the opinion of District Judge Halbert O. Woodward dated September 28, 1978.*
 
 
 2
 AFFIRMED.
 
 
 3
 JOHN R. BROWN, Circuit Judge, concurring in part and dissenting in part:
 
 
 4
 The Court has determined to affirm on the basis of the very excellent opinion of the District Court. That opinion, which appears as an appendix to the panel's opinion, adequately sets forth the facts and legal issues. I agree with the District Court and the panel that the Government's reassessment is valid and complies with § 17a(1)(b) of the Bankruptcy Act, 11 U.S.C.A. § 35(a) (1)(b). However, I disagree with the conclusion of these Courts that the Koehlers' 1965 tax return, which was fully accurate and which was filed only four months late, was not a return filed as required by law under § 17a(1)(b) of the Act. Since the applicable exception to dischargeability under the Act has the dual requirement of (i) an assessment to be made within one year of bankruptcy and (ii) a failure to make a return required by law, I would hold that the 1965 tax liabilities are discharged in bankruptcy.
 
 
 5
 The Court's decision to affirm on the basis of the District Court's opinion leaves unresolved the scope of this Court's recent decision in Harper v. District Director of Internal Revenue (In re Harper ), 580 F.2d 165 (5th Cir. 1978). Although the District Court relied on the lower Court's opinion in Harper, which was affirmed by the Fifth Circuit, I believe that it is necessary to study the language in the Fifth Circuit's decision in Harper very carefully. In addition to relying on the District Court's opinion in Harper, the District Court also discussed and distinguished without necessarily undermining the rationale of In re Wallace, 37 A.F.T.R.2d 1149 (N.D.Tex.1976). Wallace, which was handed down after the District Court's opinion but before our affirmance in Harper, held that the bankrupt filed a "return required by law" even though the return was filed 11 days late. The Government contends that the Fifth Circuit's opinion in Harper sub silentio overrules Wallace.
 
 
 6
 I believe that this Court's decision in Harper is entirely consistent with Wallace. In Harper, the Court considered whether a return filed two and a half years late constituted a return filed as required by law. The bankrupt argued that one fails to make a return required by law only if he completely fails to file a return. That is, a return that is merely late is nonetheless filed as required by law. The Court disagreed and held that a return filed two and a half years late was not filed as required by law. In so holding, the Court stated:
 
 
 7
 Nor need we decide, in this case involving over two and one-half years delay in filing, that a substantial compliance involving only a few days tardiness would not suffice.
 
 
 8
 580 F.2d at 168. Thus, without citing Wallace, the Court left open the possibility of reaching a result consistent with that case. While language in Harper could suggest that timeliness is the sole consideration,[1] in my view, the Court is reasonably clear that timeliness and accuracy should be considered and that the issue is one of substantial compliance. As the Court stated in setting out the issue:
 
 
 9
 We recognize at the outset, as did the district judge, that the phrase is ambiguous. It may be viewed as referring solely to cases in which taxes were owing and the debtor entirely failed to make any return whatever. FN2 Or it may be seen as referring to those in which there was a failure to file a return in the manner required by law, that is, in sufficient compliance with the law's dictates as to timeliness, content, etc. as to permit audit and assessment. FN3
 
 
 10
 580 F.2d at 167 & n. 2, 3 (words "in the manner" emphasized in original; other emphasis added). The Court's language suggests that absolute timeliness may not be required, particularly when the return is completely accurate.
 
 
 11
 This reading of Harper makes sense for a number of reasons. First, since the purpose of the Bankruptcy Act is to give the bankrupt a "fresh start," exceptions to dischargeability should be read narrowly. See Angelle v. Reed (In re Angelle ), 610 F.2d 1335, 1339 (5th Cir. 1980). Moreover, this reading prevents unjust results whereby a bankrupt is denied the benefit of discharge simply because his return was filed one week, one day or even one minute late. For instance, what if the bankrupt is in prison and prepares his tax return in a timely fashion but the return is misplaced by prison authorities handling the mail and is not mailed on time? I cannot believe that in such a situation, discharge should be prevented.[2] In a nutshell, I believe that the words "return required by law" refer to substantial compliance rather than literal compliance.
 
 
 12
 To the extent the District Court and the panel view timeliness as the sole consideration, I do not believe this interpretation is mandated by Harper and as I indicated above, this view can lead to absurd results. I believe that "return required by law" means substantial compliance, and timeliness and accuracy must both be examined.
 
 
 13
 I agree that under Harper a return filed one year and four months late without record explanation for the delay is unreasonable and as a matter of law cannot constitute substantial compliance. While my instincts are to allow dischargeability even here, I think Harper clearly precludes such a result when a return is filed well over a year late. And this is so even though it is undisputed that the return was completely accurate. However, with regard to the return filed only four months late, I believe that there was substantial compliance, particularly since the return was accurate in all respects.
 
 
 14
 Indeed, it is rather ironic that the Internal Revenue Service contends that the returns are not filed as "required by law," yet the Service itself based its assessments on the taxpayers' late returns. I do not believe that under the facts of this case, a four month delay is unreasonable. Indeed, recognizing various situations that could arise, the Internal Revenue Code allows extensions of time under certain circumstances. See 26 U.S.C.A. § 6081. Accordingly I would hold that under Harper, the Koehlers' 1965 tax liabilities should be discharged.
 
 ORDER
 
 15
 WOODWARD, Chief Judge.
 
 
 16
 The court has received and considered the brief of the appellant United States of America in its appeal from the Judgment of the Bankruptcy Judge, entered July 18, 1978, decreeing that all taxes, interest, and penalties assessed against appellees on September 12, 1969, for tax years 1963, 1964, and 1965 were discharged, the reply brief for the appellees William Robert Koehler and Camille Parrish Koehler, and the record from the Bankruptcy Judge's hearing on June 16, 1978. The court hereby orders:I
 
 
 17
 This appeal stems from a claim by the United States for certain income taxes assessed against William and Camille Koehler for the tax years 1963, 1964, and 1965. Appellees claim that they were discharged of income tax liability for these years pursuant to orders of discharge granted by the Referee in Bankruptcy on August 18, 1971, and December 6, 1971. Appellant contends that the appellees were not discharged of tax liability because the taxes at issue were nondischargeable under Section 17a(1)(b) of the Bankruptcy Act, 11 U.S.C. § 35(a). The parties have agreed that the tax for 1963 has been satisfied in full. Therefore, only the income tax liabilities for the tax years 1964 and 1965 are at issue.
 
 
 18
 William and Camille Koehler filed their joint income tax returns for 1964 and 1965 on a calendar year basis. They failed to file timely returns for these years, and applied for extensions of time in which to file their returns. These applications were denied, and thereafter appellees filed their 1964 tax return on August 22, 1966, and their 1965 tax return on August 26, 1966. Assessments for tax liabilities for these years were made on October 5, 1966, and December 9, 1966. As a result of a tentative allowance of claimed net operating loss carrybacks from appellees' 1966 and 1967 calendar year returns to their 1964 and 1965 tax liabilities, the amounts assessed as taxes for these years were abated in full on December 15, 1967, and August 9, 1968.
 
 
 19
 On September 12, 1969, a tax assessment was made against appellees for the 1964 and 1965 calendar years. This assessment, a reassessment of the taxes assessed on October 5, 1966, and December 9, 1966, was based on a partial disallowance of the net operating loss carrybacks appellees claimed in their 1966 and 1967 returns. Federal tax liens for this reassessment were filed on December 22, 1969.
 
 
 20
 The petitions in bankruptcy of William and Camille Koehler were filed on November 17, 1969, and November 20, 1969, respectively. Appellant filed a proof of claim in the bankruptcy proceeding on November 9, 1971, which claim was allowed full priority. Thereafter appellant contested the dischargeability of appellees' tax liability for tax years 1964 and 1965. Appellees were granted discharges of all debts, with the exception of one not at issue in the present case, on August 18, 1971, and December 6, 1971.
 
 
 21
 Appellees filed their application to re-open their bankruptcy case to determine the dischargeability of the tax debts at issue on February 5, 1974. Appellant filed its counterclaim on May 14, 1975, for a judgment decreeing that these taxes were not discharged in the earlier bankruptcy proceeding. A hearing was held in the matter before the Referee in Bankruptcy on June 16, 1978. On July 18, 1978, the Bankruptcy Judge entered a Judgment declaring the taxes, penalties, and interest assessed against appellees for the tax years 1963, 1964, and 1965 were discharged. It is from this judgment that appellant appeals.
 
 II
 
 22
 The basic issue in this appeal is whether the taxes in controversy were nondischargeable under Section 17a(1)(b) of the Bankruptcy Act (11 U.S.C. § 35(a)). This section provides in pertinent part:
 
 
 23
 "a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part . . . Provided, however, That a discharge in bankruptcy shall not release a bankrupt from any taxes . . . (b) which were assessed within one year preceding bankruptcy in any case in which the bankrupt failed to make a return required by law . . . ."
 
 
 24
 Thus there are two requirements that must be met before a discharge is denied as to tax debts under this section: 1) the taxes must have been assessed within one year of bankruptcy, and 2) the bankrupt must have failed to make a return as required by law.
 
 
 25
 Appellant contends that the taxes were assessed within one year of bankruptcy as the tax reassessment was made on September 12, 1969 and the bankruptcy petitions were filed within three months of this date on November 17, 1969, and November 20, 1969. Appellees claim that the reassessed taxes were the same taxes as the originally assessed taxes, and that the discharge of the originally assessed taxes should also operate to discharge the reassessed taxes. Appellees further argue that Section 17a(1)(b) is an equitable relief provision, and that it would be inequitable to allow the government to collect that which it had an opportunity to collect for three years prior to the filing of the bankruptcy petitions.
 
 
 26
 It is the court's opinion that the reassessment was valid and meets the requirement of Section 17a(1)(b) that the taxes have been assessed within one year of bankruptcy. The appellees chose to avail themselves of one of the benefits afforded to all taxpayers by claiming net operating loss carrybacks to the tax years in question. They also were protected by the statute of limitations in 26 U.S.C. § 6501, which applies to both primary assessments and reassessments. The government's action in its September 12, 1969, reassessment of appellees' income tax liability for 1964 and 1965 was well within the limitations period. The court concludes that the requirement that the tax assessment be within one year of bankruptcy is met.
 
 
 27
 The second requirement that must be satisfied to fall within the exception to dischargeability provided by Section 17a(b)(1) is that the bankrupt must have failed to file a tax return required by law. Appellant contends that because the 1964 and 1965 returns were untimely filed, they do not constitute "return(s) required by law" under Section 17a(1)(b). Appellees assert that what is "required by law" is the filing of an accurate return, whether filed timely or untimely.
 
 
 28
 The appellees have cited In re Wallace, 37 A.F.T.R.2d 1149 (N.D.Tex., March 4, 1976), as supporting their position. In that case the taxpayer had filed his income tax return eleven days past the due date. The government contended that the return was not a "return required by law" because it had been untimely filed. The court held the taxes discharged, saying
 
 
 29
 ". . . 'Return required by law' appears to me to be pointed more to the accuracy of the return. While timeliness could certainly become important if unreasonable delay was present, I cannot believe that eleven days' delay is all that important, particularly since the United States has not heretofore in its administrative proceedings raised any complaint about the eleven day delay or attempted to assess any penalty for that reason." 37 A.F.T.R.2d, at 1150.
 
 
 30
 The appellant argues that In re Wallace, supra, is inapplicable to the facts of this case as an unreasonable delay is present here. While the bankrupt in the Wallace case filed his return eleven days late, appellees were over one year late in filing their 1964 return and over four months late in filing their 1965 return.
 
 
 31
 Appellant contends that the court should instead follow the cases of In re Harper, 37 A.F.T.R.2d 599 (S.D.Ga., November 4, 1975), and In re O'Leary, 29 A.F.T.R.2d 822 (W.D.Wisc., March 6, 1972), which hold that "failed to make a return required by law" means failure to file a timely return. The taxpayer in O'Leary did not file returns for tax years 1962 through 1968 until 1969, while the taxpayer in Harper did not file his 1969 return until 1973. Although the court in O'Leary did not elaborate on what constituted a "return required by law," the court in Harper discussed the issue in this manner:
 
 
 32
 ". . . In other words, the Government argues that by failing to file his 1969 returns by April 15, 1970, the bankrupt thereby brought himself within the spirit, language, and intent of the exception even though he later actually filed the neglected returns.
 
 
 33
 "Although the language admittedly is not free from ambiguity, the Court agrees with the Government's reading of section 17a(1)(b)." 37 A.F.T.R.2d, at 602.
 
 
 34
 Elsewhere in the opinion, the Harper court stated that
 
 
 35
 ". . . the most reasonable construction requires that 'failed to make a return required by law' be construed to mean failure to file a return within the time limits prescribed by law." 37 A.F.T.R.2d, at 602.
 
 
 36
 It is the court's opinion that a "return required by law" is a return that is timely filed. While the court recognizes that In re Wallace, supra, makes accuracy of a return the focal point in whether it is a "return required by law," the court is of the opinion that the facts of this case indicate an unreasonable delay was present in the late filing of appellees' 1964 and 1965 tax returns. This type of delay was cited by the Wallace court as being a factor, when present, which might have more bearing than accuracy on the question of whether a "return required by law" was filed. Because the delay here involves periods of some length, the court believes the Wallace decision can be reconciled with the facts of this case.
 
 III
 
 37
 It is therefore the court's opinion that because the requirements of Section 17a(1)(b) have been met, the Judgment of the Bankruptcy Judge, entered July 18, 1978, is REVERSED, and the discharge of taxes, penalties, and interest assessed against appellees for tax years 1964 and 1965 is DENIED.
 
 
 
 *
 A copy of the opinion is attached as an appendix
 
 
 [1]
 E. g.,
 (S)ince discharge is in some real sense an act of legislative grace, it does not seem unduly harsh to require that a bankrupt have been at least a timely filer in order to partake of it.
 Id. at 168.
 
 
 [2]
 As though it read: "in any case in which a return was required by law and the bankrupt never filed any return whatever . . . ."
 
 
 [3]
 As though it read: "in any case in which the bankrupt failed to make a return substantially complying with the law's requirements .. . ."
 
 
 [2]
 The Court's holding today is analogous to that in Rich v. Commissioner of Internal Revenue, 250 F.2d 170 (5th Cir. 1957). In that case, the Court held that the Tax Court properly dismissed a prisoner's petition for redetermination of proposed tax deficiencies for lack of jurisdiction, where the prisoner would have filed the petition within the statutory period except for the carelessness of employees in the prison mail room. In dissent, I characterized the result as "harsh" and "ridiculous." In light of case law developments in the twenty years following Rich, the Fourth Circuit adopted the view taken in my dissenting opinion and expressly declined to follow Rich. See Curry v. Commissioner of Internal Revenue, 571 F.2d 1306 (4th Cir. 1978)