PRICE, Judge.
These two suits were consolidated for the purpose of trial as they arose out of the same factual situation. In Suit No. 11,151, Texas Industries, d/b/a Louisiana Industries, filed suit against Mrs. R. D. Pruett, a/k/a Ruth Pruett, and Asberry M. Dodge, to recover the sum of $741.80 for the balance due for building materials purchased by Mrs. Pruett in the construction of a residence for Mr. Dodge.
In Suit No. 11,152, Quality Building Supply of Shreveport, Inc., brought suit against these same defendants for an alleged balance of $1,628.94 also for materials sold *815 to Mrs. Pruett and used in the construction of the residence for Mr. Dodge. Each of these plaintiffs alleged that material liens had been timely filed against the property belonging to Mr. Dodge, described as Lots 9 and 19 of Chance Subdivision of Caddo Parish, Louisiana, as per map in Plat Book 650 at page 437 of Caddo Parish. The suits asked recognition of these lien rights. The defendant, Asberry M. Dodge, in his answer to each of these suits, filed a third party demand alleging that he had a written contract with Mrs. Ruth Pruett for the construction of the residence in question and that should it be determined that the plaintiffs have a valid lien against his property, then he should have judgment for this amount over and against Mrs. Ruth Pruett, and her husband, R. D. Pruett.
Subsequent to the filing of this third party demand a motion to stay the proceedings was filed on behalf of Mr. and Mrs. Pruett, alleging that bankruptcy proceedings had been instituted by them in the United States District Court. A supplemental third party petition was filed by the third party plaintiff, Asberry M. Dodge, in which it is alleged that the demands contained in the original third party petition against Mr. and Mrs. Pruett would not be affected by a discharge in bankruptcy because Mrs. Pruett is alleged to have obtained money or property under false pretenses or false representations, and, further, that she had committed willful and malicious injury to property. It is contended that these actions would preclude a discharge in bankruptcy under Title 11 U.S.C. Section 35(a) (2).
The factual allegations contained in the supplemental third party petition which support this contention are briefly as follows:
On August 17, 1966, Mr. Dodge contracted with Mrs. Pruett for the construction of a home in Blanchard, Louisiana, for $13,500.00, on property belonging to Mr. Dodge. A loan for this amount had been approved by the Farmer’s Home Administration of the United States. An understanding was effected between a Mr. Taylor of the lending agency, Mr. Dodge, and Mrs. Pruett, which would enable Mrs. Pruett to receive progress payments for work completed during the construction. She was to receive every two weeks an amount equal to 60 per cent of the material and labor expended on the structure at that time. At the time of completion she was not to have received more than 60% of the total contract price. During the course of construction the 60%, or $8,100.-00, was paid to Mrs. Pruett. Near the end of the job it was brought to the attention of Mr. Dodge that all material and labor had not been paid. At about this time Mrs. Pruett advised Mr. Dodge and the lending agency that she needed $2,500.00 of the retained $5,400.00 to pay labor and material bills. This sum was advanced. It was then learned that all material bills had not been paid, particularly the one to plaintiff, Texas Industries. Mrs. Pruett then advised that she still owed $4,600.00 for labor and materials on this job and that she had arranged for a loan of $1,-700.00 with which, together with the remaining contract price owed her, she could pay all bills. It is alleged that she exhibited a cancelled check payable to Texas Industries for $900.00 on which was written “Dodge Job”, and another check made payable to Quality Building Supply which she represented she intended to mail to pay their account. It is alleged that the owner and his lender relied on these representations in paying the remaining $2,-900.00 to Mrs. Pruett.
In her answer to the third party petitions, Mrs. Pruett denies that she made any false representations to either the owner or the lending agency.
After a trial on the merits the district court rendered judgment in Suit No. 11,151 in favor of plaintiff, Texas Industries, Inc., d/b/a Louisiana Industries, and against defendant, Asberry M. Dodge, for the sum of $741.80, and decreed that the lien previously filed against defendant’s property be recognized and maintained. The court re *816 jected the demands of third party plaintiff, Mr. Dodge, against third party defendant, Ruth Pruett, and Ronald D. Pruett.
The court rendered judgment in Suit No. 11,152 in favor of plaintiff, Quality Building Supply of Shreveport, Inc., against defendant, Asberry M. Dodge, for the sum of $1,628.94, and maintained the lien previously filed against defendants’ property. The demands of third party plaintiff, Mr. Dodge, were rejected as against Mrs. Ruth Pruett and Ronald K. Pruett.
Devolutive appeals were perfected to this court in each case by third party plaintiff, Asberry M. Dodge. The appellant has limited his appeal to the rejection of the demands of third-party plaintiff, Mr. Dodge, against the third-party defendants, Mr. and Mrs. Pruett. Therefore, the only question to be reviewed is the finding of the trial court that the actions of Mrs. Pruett did not constitute fraud or false misrepresentations, or a malicious and willful injury to property, so as not to preclude a discharge in bankruptcy of the liability otherwise resulting from this transaction.
The pertinent portions of 11 U.S.C. Section 35(a) (2), reads as follows:
“That a discharge in bankruptcy shall not release or affect any * * * liabilities for obtaining money or property by false pretenses or false representations, * * * or for willful and malicious injuries to the person or property of another, * * * ”
We shall first discuss the issue of whether Mrs. Pruett has obtained money by false representations or false pretenses.
It is contended by appellee that Mrs. Pruett was guilty of misrepresentation when she exhibited the cancelled check payable to Texas Industries on which the words “Dodge Job” were written after the check was returned to the maker, Mrs. Pruett. The evidence reflected the $900.00 paid by this check had been applied by the supplier to an old account of Mrs. Pruett and not to the Dodge job. Mrs. Pruett testified that she was under the impression that she had given instructions for this amount to have been applied to the Dodge job. She further testified that she wrote the name of the job on her returned checks as an accounting procedure and had no intent to use the check to mislead.
Mrs. Pruett denied that she showed a check made payable to Quality Building Supply of Shreveport to Mr. Taylor. She admitted advising him of her application for a loan from a Mr. McClendon and the name of a Shreveport attorney who was handling the proposed loan. The evidence reflects that Mr. Taylor called the attorney himself and verified that the loan would probably be made to her. It was further shown that the loan did not materialize because of a sudden illness of the proposed lender.
We are inclined to agree with the trial judge that the evidence does not prove that the actions of Mrs. Pruett constituted false representations or pretenses that were relied on by the owner or the lending agency in advancing the money to Mrs. Pruett. Her entire ability to pay these bills was contingent on her procurement of the $1,-700.00 loan. The status of this loan was actually verified by Mr. Taylor before paying Mrs. Pruett the balance of the contract price.
There is no evidence to show that all of the funds received by Mrs. Pruett from Mr. Dodge through his loan from the Farmer’s Home were not paid to various material suppliers or labor. Therefore, the second contention of appellant that Mrs. Pruett has maliciously and willfully injured the property of another by her failure to pay all material bills, thus subjecting the property to liens, is without merit.
We do not see fit to apply the holding in the case of Heyerdale v. Haneman, La.App., 170 So.2d 401 (4th Cir., 1964), to the facts of this case. We are of the opinion that LSA-R.S. 14:202, making it a misdemeanor for any contractor to apply any *817 funds derived from a building contract to any other purpose other than for payment of materials and labor, has reference to, a conversion or misapplication of the funds.
As we interpret the evidence in this case, Mrs. Pruett was building two houses at about the same' time. Apparently she was losing money on both jobs. Although she may have co-mingled monies received from the two owners and failed to specifically apply the exact equivalent of money received from a particular owner to suppliers of that owner’s job, there is no evidence that she diverted any of these funds for her own personal use.
For the foregoing reasons the judgments appealed from are affirmed at appellant’s costs.