JOHN R. BROWN, Circuit Judge:
 

 Simon Angelle was formerly engaged in the business of constructing homes and selling lumber and building supplies. The forces of spiraling inflation and rainy weather made it increasingly difficult for Angelle to carry out his home building contracts, so on February 14, 1974, he filed a voluntary petition of bankruptcy. To use a shop-worn legalism, he sought a “fresh start.”
 

 Quite predictably, the prospective home owners were irate. Five parties, all of whom had advanced considerable funds and were left with partially completed homes, filed objections to discharge of their claims against Angelle. All of these parties relied on § 17a(4) of the Bankruptcy Act, 11 Ü.S. C.A. § 35(a)(4), which forbids discharge of debts “created by [the bankrupt’s] fraud, embezzlement, misappropriation or defalcation while acting ... in any fiduciary capacity.” And at least some of the parties relied on § 17a(2) of the Act, 11 U.S.C.A. § 35(a)(2), which forbids discharge when the bankrupt “obtain[ed] money or property under false pretenses or representations,” and on § 17a(8) of the Act, 11 U.S.C.A. § 35(a)(8), which forbids discharge when the bankrupt’s liabilities are “for willful and malicious injuries to the person or property of another” other than conversion as excepted under [§ 17a(2)].
 
 [1]
 

 Three of the five cases were consolidated for hearing by Bankruptcy Judge Alex An-drus, who found the three debts non-dis-chargeable. The other two cases were consolidated for hearing by Bankruptcy Judge Leroy Smallenberger, who found the two debts dischargeable. All five cases were appealed to the District Court. Angelle appealed Judge Andrus’s decisions and the losing parties before Judge Smallenberger appealed those two decisions. The five cases were consolidated at the District Court level. The District Court found that Angelle had misappropriated funds while acting in a fiduciary capacity and held that none of the five debts were dischargeable. Without reaching the § 17a(2) and § 17a(8) questions, it reversed the judgments by Judge Smallenberger and affirmed the judgments by Judge Andrus.
 
 Reed v. Angelle (In Re
 
 Angelle), 425 F.Supp. 823 (W.D.La.1977). Angelle then appealed to this Court.
 

 We hold that although Angelle may have misappropriated funds, he was not acting in a fiduciary capacity as required by § 17a(4). Accordingly, we reverse the decision of the District Court, but remand for consideration of the § 17a(2) and (8) issues.
 

 I. Background: The Facts And Proceedings Below
 

 The circumstances of the five suits seeking to prevent discharge of the claims against Angelle are in all essential respects the same. The creditors, Roy Lee Berger-on, Dr. Kenneth P. Reed, Joseph Trahan, Joseph and Rita Sylvester, and Moses Dyes, each entered into a contract with Angelle
 
 *1337
 
 for the construction of a home. Each of them advanced funds to Angelle to be used for the construction of his particular home. At the time Angelle declared bankruptcy, none of the five homes had been completed. All of the creditors were forced to expend amounts in excess of their contract price to complete their homes.
 
 [2]
 

 Angelle admits that he had only one bank account, made all deposits into that account, and made no effort to segregate funds advanced by the individual parties who contracted for the construction of homes. He also admits that he did not always apply funds advanced by a particular contracting party to that party’s construction job, frequently using such funds to pay his general business debts. However, he contends that he was not acting in a fiduciary capacity. Moreover, he does not concede that he made any false representations or otherwise acted maliciously or in bad faith.
 

 Bankruptcy Judge Andrus found that in the three cases before him, Angelle’s debts were nondischargeable. He based his decision on three alternative grounds. First, relying on § 17a(4), he held that Angelle had misappropriated funds while acting in a fiduciary capacity. Second, relying on § 17a(2), he held that Angelle had obtained advances from the contracting parties under false pretenses. Finally, relying on § 17a(8), he held that Angelle’s liabilities were created through willful and malicious misappropriation of the funds advanced by the creditors, causing these parties financial injury.
 

 Bankruptcy Judge Smallenberger, on the other hand, in the two cases before him, found the debts dischargeable. In two extremely vague — and identically reasoned— opinions, Judge Smallenberger held that under Louisiana jurisprudence, Angelle’s debts were dischargeable even though An-gelle “comingle[d] funds on numerous jobs and fail[ed] to extend the exact equivalent of money received from a particular job for that job.” In holding the debts dischargea-ble, Judge Smallenberger did not explicitly state whether he had even considered § 17a(2), (4), or (8).
 
 [3]
 

 On appeal, the District Court found that in all five cases Angelle had misappropriated funds while acting in a fiduciary capacity. Since Angelle virtually conceded that he had misappropriated funds, the District Court focused almost exclusively on whether Angelle was a fiduciary. The Court first discussed a Louisiana criminal law, LSA-R.S. 14:202,
 
 [4]
 
 which makes it a criminal offense for a contractor to use funds advanced by a contracting party for any purpose other than material and labor for the advancing party’s project. This law. suggested to the District Court that Angelle, when accepting advances from the contract
 
 *1338
 
 ing parties, occupied a position of trust and confidence.
 
 [5]
 

 The Court then discussed the meaning of “fiduciary.” It quoted from an Eighth Circuit case,
 
 [6]
 
 which defined a fiduciary relationship as:
 

 “A relation subsisting between two persons in regard to a business, contract, or piece of property, ... of such a character that each must repose trust and confidence in the other and must exercise a corresponding degree of fairness and good faith. Out of such a relation, the law raises the rule that neither party may take selfish advantage of his trust, or deal with the subject matter of the trust in such a way as to benefit himself or prejudice the other except in the exercise of the utmost good faith and with the full knowledge and consent of that other.”
 

 425 F.Supp. at 826,
 
 quoting Farrow v. Dermott Drainage Dist.,
 
 139 F.2d 800, 805 (8th Cir. 1944).
 

 On the basis of this broad definition of fiduciary and the Louisiana criminal statute, the District Court held that all five debts were not dischargeable under § 17a(4). The issue before us is whether the District Court correctly determined that Angelle was a fiduciary for purposes of § 17a(4).
 

 II. Was Angelle A Fiduciary?
 

 Since this Circuit has not previously discussed the meaning of fiduciary under § 17a(4), and since various courts have taken somewhat different views on the issue, some background discussion is essential.
 

 A. Principles Gleaned From Prior Cases
 

 The Bankruptcy Act of 1841 contained a provision similar to § 17a(4). In 1844, the Supreme Court considered whether a factor who sold property belonging to his principal and failed to pay the principal the proceeds owed him a debt created in a fiduciary capacity. The Court held' that a factor was not a fiduciary and made clear that under the Bankruptcy Act, the concept of fiduciary should be narrowly defined:
 

 In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the [Bankruptcy Act]. . . .
 
 The act speaks of technical trusts, and not those which the law implies from the contract.
 
 A factor is not, therefore, within the act.
 

 Chapman v. Forsyth,
 
 2 U.S. (How.) 202, 207, 11 L.Ed. 236, 238 (1844) (emphasis added).
 

 Subsequently, the Supreme Court refined and narrowed the concept of fiduciary articulated in
 
 Chapman.
 
 The Court made clear that the technical trust required by
 
 Chapman
 
 must exist prior to the act creating the debt and without reference to that act. See
 
 Upshur v. Briscoe,
 
 138 U.S. 365, 378, 11 S.Ct. 313, 317, 34 L.Ed. 931, 936 (1890). As the Court stated in
 
 Davis
 
 v.
 
 Aetna Acceptance Co.,
 
 293 U.S. 328, 333, 55 5.Ct. 151, 154, 79 L.Ed.2d 393, 397-98 (1934) (emphasis added):
 

 It is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee .ex maleficio.
 
 He must have been a trustee before the wrong and without reference thereto.
 
 In the words of Blatchford, J., “The language would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created.”
 
 (Quoting Upshur v. Briscoe, supra.)
 

 
 *1339
 
 Thus, a constructive trust is not sufficient to create a fiduciary relationship under the discharge provisions of the Bankruptcy Act.
 

 These Supreme Court cases giving limited meaning to the term fiduciary are entirely consistent with — and indeed, serve to promote — the Bankruptcy Act’s very purpose, which is “to give the debtor a ‘new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.’ ”
 
 Lines
 
 v.
 
 Frederick,
 
 400 U.S. 18, 19, 91 S.Ct. 113, 114, 27 L.Ed.2d 124, 127 (1970),
 
 quoting Local Loan Co. v. Hunt,
 
 292 U.S. 234, 244-45, 54 S.Ct. 695, 699, 78 L.Ed. 1230, 1235 (1933). The cases are also consistent with the well-established principle that exceptions to discharge should be limited to those clearly expressed in the statute.
 
 Gleason v. Thaw,
 
 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717, 719 (1915).
 

 In recent years, courts have extended the principles of
 
 Chapman
 
 and its progeny to situations where state statutes impose obligations on parties engaging in certain kinds of contracts. Since these cases reach conflicting results on similar facts, they are difficult to reconcile with one another.
 

 In May of 1976, the Tenth Circuit decided a case with facts very much like those involved here. The case,
 
 Allen v. Romero (In re Romero),
 
 535 F.2d 618 (10th Cir. 1976), also involved advances made to a building contractor that were not used by the contractor for the party’s construction project. The Court held that the contractor acted in a fiduciary capacity. It based its decision on a New Mexico statute which provides for revocation of a contractor’s license if funds advanced by the owner are not applied to the completion of the contract. The Court reasoned that this statute-imposed a fiduciary duty on the contractor.
 

 Three months later, in
 
 Schlecht v. Thornton (In Re Thornton),
 
 544 F.2d 1005 (9th Cir. 1976), the Ninth Circuit held that an employer who, in violation of a written agreement, made deductions from the wages of four employees and then failed to remit-the funds to a vacation-savings trust fund, was not a fiduciary. The Court reached its conclusion even though an Oregon statute makes an employer’s failure to remit such funds in violation of a written agreement unlawful.
 

 Then came the decision of the District Court for the Western District of New York in
 
 Besroi Construction Corp. v. Kawczynski (In re Kawczynski),
 
 442 F.Supp. 413 (W.D.N.Y.1977). In
 
 Kawczynski,
 
 the debtor (another home builder) also used funds advanced by contracting parties for business purposes other than for the projects of the contracting parties. The Court found the contractor to be a fiduciary based on the New York Lien Law, which requires a contractor to keep detailed records of advances and to segregate funds advanced, and makes it a criminal offense to use funds advanced for a particular project for other purposes.
 

 Most recently, in
 
 Devaney
 
 v.
 
 Dloogoff (In Re Dloogoff),
 
 600 F.2d 166 (8th Cir. 1979), the Eighth Circuit held that a builder who received advances for the construction of a garage and failed to apply the advances to the debts created by labor and materials was not a fiduciary. The Court reached its decision despite the existence of a Nebraska law making it illegal for a contractor who receives advances to fail to apply the advances to claims of laborers and material-men having a right to file a lien.
 
 [7]
 

 While there are other relevant cases,
 
 [8]
 
 the cases discussed above present the various approaches utilized by the courts and dem
 
 *1340
 
 onstrate adequately the confusion surrounding the definition of fiduciary under § 17a(4). We believe that to analyze the case before us, we must first attempt to make some sense out of these cases.
 

 At the outset, we wish to make clear that in our view,
 
 Chapman
 
 and its progeny need not be read so narrowly that a state can
 
 never
 
 make certain parties fiduciaries by imposing trust-like duties, such as segregating accounts, on those who enter into certain kinds of contracts. Under certain statutes, it is entirely fair to charge contractors with intent to create a trust simply because they have entered into a contract governed by a statute.
 
 [9]
 

 We have our doubts, however, that a statute which merely makes misappropriation of funds a crime — without, for example, requiring segregation of accounts — • would be enough to charge the parties with an intent to create a trust. Fortunately, we need not resolve this issue, since we believe that the requirement that the trust arise prior to the act creating the debt applies with full force to what
 
 Kawczynski
 
 calls a “statutory trust.” Thus, even assuming that a statute making misappropriation of funds a crime creates a trust, this trust arises out of the misappropriation and plays its role only at that very time.
 
 [10]
 

 Based on this requirement — that the trust arise prior to the act creating the debt — we conclude that
 
 Romero
 
 was wrongly decided”. Even assuming that the rule providing for license revocation in instances of misappropriation creates a trust, the revocation, like the criminal penalties in the
 
 Thornton
 
 and
 
 Dloogoff
 
 statutes, occurs only upon the act of misappropriation. It simply cannot be said that the trust exists prior to the wrong and without reference to it.
 
 [11]
 

 In contrast to
 
 Romero,
 
 however, we think the statute involved in
 
 Kawcznyski did
 
 serve to impose a fiduciary duty on the contractor. To begin with, the Lien Law contains requirements very much like those traditionally imposed on a trustee. As the Court recognized, once payments are made to the contractor, “he must segregate and keep records of trust funds, and pay them out according to a statutory priority scheme.” 442 F.Supp. at 417. Moreover, the trust clearly arises prior to and without regard to the misappropriation:
 

 In addition to creating independent fiduciary duties, the Lien Law makes clear
 
 *1341
 
 that the trust arises prior to rather than by virtue of any claim of misappropriation of trust funds. [The Lien Law] provides that the trust commences when the contractor first receives payment from the owner, “whether or not there shall be at that time any beneficiary of the trust,” and continues until all of the trust beneficiaries have been paid.
 

 Id.
 
 at 417.
 

 One further diversion is necessary before we proceed to the instant case — and yes, we do plan to get to it. We think it essential to clarify the precise role of state law and in so doing, to summarize the above analysis.
 
 [12]
 
 To begin with, the scope of the concept fiduciary under § 17a(4) is a question of federal law. The Supreme Court has repeatedly made clear that the concept is limited to technical trusts. Thus, regardless of how a state defines fiduciary, the
 
 Chapman/Davis
 
 definition applies in cases involving § 17a(4).
 

 On the other hand, state law takes on importance in determining when a trust exists. The state may impose trust-like obligations on those entering into certain kinds of contracts, and these obligations may make a contracting party a trustee. Of course, the trust must arise prior to and without reference to the act creating the debt. We also believe that state law may play importance in determining whether a specific case involves an express trust.
 
 [13]
 

 B. How These Principles Affect Angelle
 

 Examining the case before us in light of all the above, it is clear that the District Court erred in finding that Angelle was a fiduciary under § 17a(4). To begin with, the Court applied a definition of fiduciary that is far too broad. The definition relied upon simply requires a relationship involving confidence, trust, and good faith. Under § 17a(4), however, a fiduciary relationship is limited to a technical trust.
 

 The only possible way Angelle could be considered a fiduciary is if Louisiana law imposed trust-like duties on contractors in his position. The only statute relevant on this point is LSA-R.S. 14:202,
 
 [14]
 
 which make misappropriation of funds by a contractor a criminal offense. As in
 
 Thornton
 
 and
 
 Dloo-goff,
 
 however, even assuming the criminal statute made Angelle a trustee, Angelle would have been a trustee only at the time of and because of the misappropriation.
 
 [15]
 

 III. Some Loose Ends
 

 Our finding that Angelle was not a fiduciary does not mean that Angelle necessari
 
 *1342
 
 ly gets the complete “fresh start” he seeks. As we previously indicated, at least some of the five parties seeking to prevent discharge relied not only on § 17a(4), but on § 17a(2) and (8). Judge Andrus, who wrote one opinion for all three cases before him, simply assumed that each of the three parties challenging discharge raised all three theories. On the other hand, Judge Smal-lenberger did not specifically mention in either of his two opinions which of the three theories the parties raised (or on what theory he based his decision).
 

 The District Court obviously believed that all five parties challenging discharge relied on § 17a(4). However, because the opinion did not reach the § 17a(2) and (8) issues, we cannot tell whether, in the view of the District Court, all — or any — of the parties raised these two theories, let alone whether the facts would justify nondis-chargeability under either one.
 

 Accordingly, we must remand the case to the District Court, which may further remand to the Bankruptcy Court if it deems appropriate. The District Court or, on further remand, the Bankruptcy Court, should determine: (1) which parties raised § 17a(2) and § 17a(8) claims, (2) whether the parties who did not raise either or both of these claims should be granted leave to amend their complaints, and (3) whether the facts in the five cases justify non-dischargeability under § 17a(2) or § 17a(8) or both.
 

 REVERSED and REMANDED.
 

 [1]
 

 . The rather complicated reasons for our uncertainty concerning which parties relied on § 17a(2) and § 17a(8) are discussed in part III of this opinion.
 

 [2]
 

 . For a detailed chronology of the relevant facts and precise financial sums involved, as found initially by Judges Andrus and Smallen-berger, see the District Court opinion, 425 F.Supp. at 824 -25.
 

 [3]
 

 . The Louisiana case relied upon by Judge Smallenberger held that under the facts of the case, § 17a(2) did not prevent discharge.
 
 Texas Industries v. Pruet,
 
 219 So.2d 813 (La.App. 1969) (discussed in note 15,
 
 infra).
 
 Was Judge Smallenberger similarly considering § 17a(2)? Was he considering
 
 only
 
 § 17a(2P His brief opinions do not answer these questions.
 

 [4]
 

 . LSA R.S. 14:202 provides:
 

 Any person, contractor or subcontractor or agent of- a contractor or subcontractor who has applied any money received on account of any contract including contracts and mortgages for interim financing, for the construction, erection, or repair of any building, structure, or other improvement to any other purpose than the settlement of claims for material and labor due or to become due for said construction or under the contract shall, in case of default on the contract, or default in payment of claims for material or labor, be fined not less than one hundred dollars nor more than five hundred dollars and imprisoned for not less than thirty days nor more than six months, and in default of fine, imprisoned for not less than thirty days nor more than six months additional.
 

 [5]
 

 . The Court also pointed out that under Louisiana law, if a building contractor does not pay certain suppliers and laborers who contribute to improvements on the landowner’s property, then a lien may arise on the landowner’s property and the landowner may be held personally liable for damages. LSA-R.S. 9:4801
 
 et seq.
 
 The Court reasoned that because of these risks on landowners, a building contractor should be held to a high duty to apply funds advanced by a landowner to pay the expenses of the landowner’s project.
 

 [6]
 

 . The Eighth Circuit quote is itself a quote from Black’s Law Dictionary.
 

 [7]
 

 . The Court explicitly recognized that the Nebraska statute was very similar to the Louisiana criminal statute considered by the District Court in the instant case. 600 F.2d at 169 (citing the District Court opinion in the instant case, 425 F.Supp. at 826 n.l).
 

 [8]
 

 . See, e. g.,
 
 Clark & Rapuano, Inc. v. Morris Ketchum, Jr. & Assocs,
 
 409 F.Supp. 743 (S.D. N.Y.1975) (like
 
 Kawczynski,
 
 Court found fiduciary relationship on the basis of the New York Lien Law).
 

 [9]
 

 . We agree with
 
 Kawczynski’s
 
 reading of
 
 Thornton,
 
 namely, that
 
 Thornton
 
 did not reject the principle that in some situations, a trust imposed by statute could create a fiduciary relationship.
 
 Thornton
 
 appeared to rest on the fact that the legal duty imposed on the contractor arose out of and with reference to the claim of misappropriation. See note 10,
 
 infra.
 
 Similarly,
 
 Dloogoff
 
 seemed to leave open the possibility that some statutes could create fiduciary relationships. It simply held that the Nebraska statute involved in the case did not create such a relationship. See 600 F.2d at 169-70.
 

 [10]
 

 . In discussing the Nebraska criminal statute • making misappropriation of funds a crime,
 
 Dloogoff
 
 pointed out:
 

 Assuming arguendo that a fiduciary relationship of the character necessary to satisfy section 17(a)(4) existed in this case through the action of [the Nebraska criminal statute], it is difficult to see how it could have existed before the acts creating the debt. The trust must exist before the debt. [Citing
 
 Davis].
 

 600 F.2d at 169, n. 4.
 

 Thornton,
 
 although somewhat unclear in its extremely brief rationale, strongly hinted by its reference to
 
 Davis
 
 that its concern was that the trust did not arise before the debt was created:
 

 While Oregon law may impose a trusteeship upon an employer who misappropriates the monies he is contractually obligated to deduct, such a trust does not convert the employer’s status to that of a fiduciary for the purposes of § 17(a)(4) of the Bankruptcy Act. [Citing
 
 Davis.]
 

 544 F.2d at 1007. Earlier in the opinion, the Court had cited
 
 Davis
 
 for the general proposition that the trust must not be one arising out of the very act of wrongdoing. See
 
 id.
 

 [11]
 

 .
 
 Romero
 
 reasoned that because the license was obtained prior to any dealings between the contracting parties, the trust was created prior to the claim of misappropriation. 535 F.2d at 622. We are simply not persuaded by this reasoning. Trusts do not arise in the abstract, but only among parties. It is hornbook law that a trust must contain a settlor, a trustee, and beneficiaries. See 76 Am.Jur.2d Trusts, § 31, pp. 278-79 (1975).
 

 [12]
 

 . Our analysis applies to the Bankruptcy Act as it existed prior to the amendments in 1978. It should be pointed out that the new Bankruptcy Reform Act of 1978 — which is not involved in the case before us — makes changes to § 17a(4). Unlike the previous Acts, under the Bankruptcy Reform Act the phrase “while acting in fiduciary capacity” only modifies the words fraud and defalcation. Misappropriation has been dropped entirely, and the fiduciary requirement does not apply to debts resulting from embezzlement or larceny. See § 523(a)(4) of the Bankruptcy Reform Act, 11 U.S.C.A. § 523(a)(4). However, where the fiduciary requirement still applies, the definition first articulated by the Supreme Court over a century ago will no doubt continue to apply, since there is nothing in the Bankruptcy Reform Act or its legislative history to suggest otherwise. See 3 Collier on Bankruptcy, *' 523.14, pp. 523-98 to 523-105 (15th ed. 1979).
 

 [13]
 

 .
 
 Cf. Jaffke v. Dunham,
 
 352 U.S. 280, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957) (determination of whether trust established in bankruptcy proceeding under § 70(a)(4), 11 U.S.C.A. § 110(a)(4), is one of state law).
 

 [14]
 

 . The statute is quoted in note 4,
 
 supra.
 

 [15]
 

 . Similarly, those provisions imposing a lien' and personal liability on the landowner if the contractor does not pay suppliers and laborers, see note 5,
 
 supra,
 
 even if they could be read to make Angelle a trustee (which is doubtful), would arise only at the time of and because of the misappropriation.
 

 Our determination that the applicable Louisiana law does not create a fiduciary relationship under § 17a(4) makes it appropriate that we comment on two Louisiana cases,
 
 Heyerdale v.
 
 Haneman, 170 So.2d 401 (La.App.1964) (discussed in the District Court opinion in the instant case, 425 F.Supp. at 8261), and
 
 Texas Industries
 
 v.
 
 Pruett,
 
 219 So.2d 813 (La.App. 1969) (relied on by Judge Smallenberger). In
 
 Heyerdale,
 
 the creditor advanced funds to the bankrupt for the repair of real estate. The bankrupt did not apply the funds to pay subcontractors and materialmen. The Court’s reasoning is somewhat fuzzy. The Court quoted § 17a(4) and § 17a(2), which at that time applied not only to false statements, but to willful and malicious injury to property (later
 
 *1342
 
 to become § 17a(8)). The Court discussed LSA-R.S. 14:202,
 
 quoted in
 
 note 4,
 
 supra
 
 and concluded (as best we can tell) that this statute made the bankrupt a fiduciary. Thus, the Court was either relying on § 17a(4) or else was under the misimpression that § 17a(2) also contains a fiduciary requirement. In any event, we think the case was wrongly decided, for as we stated above, LSA-R.S. 14:202 does not establish a fiduciary relationship for purposes of § 17a(4).
 
 Texas Industries
 
 also involved misapplication of funds in the context of a construction contract. The challenge to discharge was based not on § 17a(4), but on § 17a(2). Section 17a(2) contains no fiduciary requirement. The Court concluded that the evidence did not demonstrate that the bankrupt made any false representations or maliciously and willfully injured the property of the creditors. The Court went on, however, to discuss
 
 Heyerdale,
 
 holding that
 
 Heyerdale
 
 did not apply because the bankrupt in
 
 Texas Industries
 
 did not divert funds to her own use. The Court pointed out that LSA-R.S. 14:202 applies only to misapplication of funds for personal use. Since the creditor in
 
 Texas Industries
 
 did not attempt to rely on § 17a(4), we cannot understand why the Court in
 
 Texas Industries
 
 found it necessary to distinguish
 
 Heyerdale.
 
 In any event, to the extent that language in
 
 Texas Industries
 
 reaffirms the conclusion in
 
 Heyer-dale
 
 that LSA-R.S. 14:202 may create a fiduciary relationship for purposes of § 17a(4), we disagree with such language.