In the Matter of John J. ELMS, Jr. and Gretchen Kuntz Elms, Debtors.

BROADCAST MUSIC, INC., Plaintiff,

v.

John J. ELMS, Jr., Defendant.

Adv. No. 89–0161–K.
Bankruptcy No. 87–03936.

United States Bankruptcy Court, E.D. Louisiana.

Jan. 19, 1990.

Bruce J. Ruzinsky, Dotson & Scofield, Houston, Tex., F. Neelis Roberts, Dotson & Scofield, New Orleans, La., for plaintiff.

Merrill T. Landwehr, Landwehr & Hof, New Orleans, La., for debtor/defendant.

## MEMORANDUM OPINION

THOMAS H. KINGSMILL, Jr., Bankruptcy Judge.

On October 18, 1989, this matter came before the Court on the motion of the plain-tiff, Broadcast Music, Inc. ("BMI"), for a summary judgment in its favor and against the Debtor, John J. Elms, Jr., pursuant to Bankruptcy Rule 7052. Considering the statements of counsel, the memorandum and exhibits filed, and the applicable law, the Court now enters the following Memorandum Opinion.[1]

As background, the Court adopts the findings of the Fifth Circuit in *Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233 (5th Cir.1988), a proceeding from which the instant case arises.

The plaintiff, Broadcast Music, Inc. ("BMI"), is a nonprofit licensing organization that obtains public-performance rights in copyrighted musical compositions and collect royalties to be distributed to the artists. The defendant, Xanthas, Inc., which does business in Louisiana as TAC Amusement Co., owns and operates hundreds of jukeboxes, video games, pinball machines, and billiard tables that it places in various establishments.

BMI sued Xanthas and its owner, John J. Elms, Jr., in federal district court, alleging that Xanthas had committed fifteen acts of copyright infringement at four locations in July and August 1986. The complaint alleged that Xanthas had failed to pay the required fee to the U.S. Copyright Office for licenses to operate its jukeboxes and had then played on them compositions in which BMI held the performance rights. BMI later amended its complaint to alleged 182 infringements at 22 different locations between May and November 1986. The amended complaint sought an injunction against further infringements and damages of at least $250 for each infringement claimed.

The action was stayed against Elms, who had declared bankruptcy. Xanthas stipulated that it owned seven of the jukeboxes and had committed 44 of the infringements, but it contended that it

---

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 523. This matter is a core proceeding within 28 U.S.C. § 157(b)(2)(I). This matter was re-ferred to the Court pursuant to the Standing Order of Reference. This Memorandum Opinion constitutes this Court's findings and conclusions pursuant to Bankruptcy Rule 7052.

did not know whether it owned the remaining jukeboxes on which the infringements allegedly took place.

After a bench trial, the district court entered judgment for BMI. 674 F.Supp. 553. In its findings of fact, the court stated that each of the 182 infringements alleged occurred on the dates and in the locations alleged and that on each date, Xanthas had owned and operated the jukeboxes on which the songs were played without having paid the copyright office the required registration fee. The court found that Xanthas knew of the registration requirement, having paid the full registration fees between 1978 and 1981, and having been appraised of its delinquency by BMI, but had "willfully neglected" to pay registration fees from 1984 through 1986.

Because BMI had elected, as was its right, to take the "statutory damages" authorized by § 504(c) of the Copyright Act,[2] the district court concluded that BMI could recover between $250 and $50,000 for each infringement. [After a trial on the merits, the district court awarded BMI $319,500 in statutory damages.]

*Broadcast Music*, 855 F.2d at 235.

On appeal, Xanthas challenged the District Court's finding that Xanthas's infringement was willful. On this issue, the Fifth Circuit wrote:

There is no merit in Xanthas's claim that its infringement was not willful. Xanthas admits that it knew of the registration requirements and made a conscious decision to violate them; it argues only that its violation was not "deliberate" because it could not afford to pay the fees. A defendant acts "willfully: within the meaning of § 504(c)(2), however, if he knows his actions constitute an infringement; the actions need not have been malicious. Faced with a financial inability to pay the fees required by law Xanthas could have approached BMI and sought permission, temporary or otherwise, to play copyrighted songs, Instead, it chose to stay in business and use

BMI's music without paying for it. That was patently willful. (Footnote omitted)

*Broadcast Music*, 855 F.2d at 236.

Accordingly, the Fifth Circuit affirmed the District Court's finding that the infringements were willful, but reversed the finding as to the number of infringements proved by admissible evidence. The Fifth Circuit, therefore, disallowed the damages and remanded the case for further proof on the number of infringements and possibly for a different measure of damages. *Broadcast Music*, 855 F.2d at 240.

On remand, the District Court entered a final judgment against Xanthas for willful infringement of 44 copyrighted musical compositions in the amount of $308,000. On April 17, 1989, after hearing on an unopposed motion for summary judgment, the District Court entered a final judgment in favor of BMI finding the Debtor jointly and severally liable with Xanthas on the judgment and the award of costs and fees.

Several facts, relevant here, supported the District Court's April 17, 1989 judgment. It was undisputed that the Debtor was the president of Xanthas before, during, and after the acts of infringement took place. The Debtor admitted under oath that he was an officer, director and shareholder of Xanthas. The Debtor had the ability, the right, and the duty to supervise the infringing activity of Xanthas. Finally, the Debtor gained financial benefit from *his* and Xanthas's infringing activities (emphasis added).

The Court has reviewed the transcript of the two day trial held before the District Court. The Debtor, under oath, admitted that he knew he was to register the jukeboxes with the copyright office. The Debtor also testified that he remembered receiving at least one letter in 1985 informing him of the registration requirements of the copyright law. *See Transcript* October 23,

**2.** 17 U.S.C. § 504(c).

1987 at 25–30. Nonetheless, the Debtor, by his own testimony, chose to pay debts to the Internal Revenue Service for back taxes, to the Bank of Louisiana for a mortgage debt, and for other expenses to keep his company operating. These other debts were paid while jukebox registration fees, those required by federal copyright law remained unpaid, thus benefiting the Debtor financially. At all times, the Debtor was an officer, director, and shareholder of Xanthas. The Debtor had the ability to supervise the infringing activity of Xanthas.

The general policy of bankruptcy law favors allowing the honest debtor to discharge debts and to make a fresh start free from the burden of past indebtedness. *E.g., Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 114, 27 L.Ed.2d 124 (1970); *Boyle v. Abilene Lumber, Inc. (In Re Boyle)*, 819 F.2d 583, 587 (5th Cir.1987). It is a well-established "that exceptions to discharge should be limited to those clearly expressed in the statute," *Angelle v. Reed (In re Angelle)* 610 F.2d 1335, 1339 (5th Cir. 1980), and that exceptions to discharge are to be narrowly construed against the creditor and in favor of the debtor. *Murphy & Robinson Investment Co. v. Cross (In Re Cross)*, 666 F.2d 873, 879–80 (5th Cir.1982). As such, the objecting creditor must prove by clear and convincing evidence that a particular debt be determined nondischargeable. *E.g., Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577 (11th Cir.1986).

Title 11 U.S.C. § 523(a)(6) provides that "a discharge under section 727 ... [of the Bankruptcy Code] does not discharge an individual debtor from any debt ... for the willful and malicious injury by the debtor to another entity or to the property of another entity."

A noted bankruptcy treatise in defining this exception to discharge has stated:

An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will. The word "willful" means a "deliberate or intentional," act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which produces harm and is without just cause or excuse, may constitute a willful and malicious injury. It is said that this category of liabilities excepted from discharge "contemplates something more restricted than malice in the broader sense," and covers all cases in which the facts of intent and malice are judicially ascertained, irrespective of the character of the allegations made by the parties (footnotes omitted).

3 *Collier on Bankruptcy*, ¶ 523.16[1] at 523–117 (15th ed. 1990). The Fifth Circuit has adopted the substance of this interpretation. *Matter of Dardar*, 620 F.2d 39 (5th Cir.1980); *Vickers v. Home Indemnity Co.*, 546 F.2d 1149 (5th Cir.1977) (decided under Section 35(a)(8) of the Bankruptcy Act, the precursor to § 523(a)(6)).

Proof of a copyright infringement under Title 17, U.S.C., does not necessarily provide sufficient proof of wrongdoing under 11 U.S.C. § 523(a)(6). *Continental Map Co. v. Massier (In re Massier)* 51 B.R. 229 (Bankr.D.Colorado 1985). Therefore, when a bankruptcy court is presented with a judgment for copyright violation, it is required to look behind the judgment and decide whether the debt should be non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). *Broadcast Music, Inc. v. Gabaldon (In re Gabaldon)* 55 B.R. 431 (Bankr.D.N.M.1985).

In *Gabaldon*, the bankruptcy court found that the debtor intentionally converted the property of others to his own use by failing to obtain the required licenses needed to cover music preformed in his business. The bankruptcy court also found that the debtor was in violation of the federal copyright law. Accordingly, the bankruptcy court held the debt to be nondischargeable finding that the debtor had knowledge of his legal obligations and his violation of the federal copyright law was an "aggravating feature which evinces a willingness to voluntarily inflict injury on BMI and the writers and publishers." *Gabaldon* 55 B.R. at 433.

In the instant case, the Court is satisfied that these material facts are not in dispute:

(1) at all times, the Debtor was an officer, director, and shareholder of Xanthas;

(2) the Debtor had the ability to supervise the infringing activity of Xanthas;

(3) Xanthas committed acts of copyright infringements with the Debtor's knowledge of such infringements were in violation of federal copyright law; and

(4) the Debtor gained a financial benefit from the acts of infringement to the detriment of BMI.

Therefore, from these facts the Court concludes as a matter of law, that the Debtor with personal knowledge of the federal copyright registration requirements and his failure to cause the registration of the jukeboxes, has caused injury to Broadcast Music by depriving it of its royalty payments. As in *Gabaldon*, the Debtor's knowing failure to obey the federal copyright law is "an aggravating feature which evinces a willingness to voluntarily inflict injury on BMI...." *Id.* 55 B.R. at 433.

For these reasons, the Court will grant BMI's motion for summary judgment finding the debt, represented by the judgment entered April 17, 1989, in the amount of $308,000 and the award of costs and fees in the amount of $54,311.05, is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).