IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-50330
Summary Calendar

_____

IN THE MATTER OF:  HENRY W ATHERTON, III,

                    Debtor,

LAURA ELIZABETH RADCLIFFE,

                    Appellant,

            v.

HENRY W ATHERTON, III,

                    Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
(A-98-CV-796-JN)
_____

August 25, 1999

Before KING, Chief Judge, HIGGINBOTHAM and STEWART, Circuit
Judges.

PER CURIAM:[*]

     Laura Radcliffe, the former wife of Henry W. Atherton III,

appeals the district court order affirming the order of the

bankruptcy court that discharged certain debts allegedly owed her

by Atherton.  She argues on appeal that these debts, which are

related to divorce proceedings between Radcliffe and Atherton,

_____

     [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

are non-dischargeable under 11 U.S.C. § 523(a)(2), (a)(4)-(6), and (a)(15).  For the following reasons, we disagree and affirm the order of the district court affirming the bankruptcy court's order.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Henry W. Atherton III and Elizabeth Radcliffe's marriage ended in divorce.  After a trial, the 303rd Judicial District Court of Dallas County, Texas entered a divorce decree between the two parties on June 19, 1987.

Several portions of the divorce decree are relevant to this appeal.  These portions relate to:  (1) mortgage payments on the community residence, (2) an award of $30,000 plus interest to Radcliffe resulting from a breach of "fiduciary" duty by Atherton, (3) an award of $75,000 plus interest to Radcliffe intended to "reasonably and fairly compensate [Radcliffe] for her rightful share of community property and income," (4) an award of $25,000 plus interest to Radcliffe due to "acts of malice" by Atherton, and (5) an award of $20,000 plus interest to Radcliffe to compensate her for attorneys' fees.

The first item noted, the mortgage payments on the community residence, needs further explanation.  In the divorce decree, the state trial court ordered that Atherton "shall pay all mortgage payments pending the sale of this community residence until payments made by [Atherton] are equal to funds expended by [Radcliffe] or until the community residence is sold, whichever occurs first."  Thereafter, Radcliffe obtained an Order on Motion

2

for Enforcement of Prior Order from the state court on March 21, 1988 which liquidated that portion of the prior divorce decree in the amount of $11,514.23. Radcliffe was also awarded $100 in attorneys' fees relating to the enforcement order. In addition, Radcliffe claims that she paid $47,701.81 in mortgage payments, that Atherton allegedly owed Radcliffe. In all, she claims that "$59,215.44 was part of the mortgage reimbursement due Radcliffe under the [Divorce] Decree."[1]

Atherton is a debtor in an individual chapter 7 bankruptcy litigation case pending in bankruptcy court. Radcliffe brought her action in the bankruptcy court below under 11 U.S.C. § 523 for determination of the dischargeability of the amounts allegedly owed by Atherton. Her complaint was a core proceeding under § 157(2)(I). The bankruptcy court, after analyzing § 523(a)(2), (a)(4), (a)(5), (a)(6), and (a)(15) of the Bankruptcy Code and the doctrine of issue preclusion, discharged all indebtedness owed by Atherton to Radcliffe. The district court, after conducting a de novo review, affirmed the bankruptcy court's order. Radcliffe timely appealed.

## II. DISCUSSION

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. See Realty Portfolio, Inc. v. Hamilton (In re Hamilton), 125 F.3d 292, 295 (5th Cir.

---

[1] We note that $11,514.23 plus $100 plus $47,701.81 equals $59,316.04, not $59,215.44. However, because we conclude infra that the bankruptcy court did not err in concluding that this debt was dischargeable, any discrepancy is immaterial.

1997).  A finding of fact is clearly erroneous "only if, considering all the evidence, we are left with the definite and firm conviction that a mistake has been made."  Young v. National Union Fire Ins. Co. (In re Young), 995 F.2d 547, 548 (5th Cir. 1993).  Where, as here, the district court has affirmed the bankruptcy court's findings, "[s]trict application of this standard is particularly appropriate."  Id.

Radcliffe argues that various components of Atherton's debt to Radcliffe that are evidenced by the divorce decree and two subsequent orders of the 303rd District Court of Dallas County, Texas are non-dischargeable under several subsections of 11 U.S.C. § 523(a).  Specifically, Radcliffe points to § 523(a)(2), (a)(4)-(a)(6), and (a)(15).  We follow the same order as the bankruptcy court.  First, we consider the application of § 523(a)(4) to the $30,000 breach of fiduciary duty award. Second, we analyze whether the $75,000 and $25,000 are rendered non-dischargeable under § 523(a)(2) or (a)(6).  Finally, we consider whether any of the debts are non-dischargeable under § 523(a)(5) or (a)(15).

## A.  Section 523(a)(4)

Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4).  Radcliffe argues that because the state court divorce decree states that the relationship between Atherton and herself was "fiduciary in nature," and because the state court

4

premised its award of $30,000 on its finding that Atherton "breached a fiduciary duty to" her, § 523(a)(4) should apply to bar the dischargeability of the $30,000 debt.

We agree with the bankruptcy court's resolution of this issue. As that court noted, "it is well settled federal bankruptcy law that for a debt to be found non-dischargeable under 11 U.S.C. § 523(a)(4), the trust for which the debtor is a fiduciary must be an express or technical trust." See Texas Lottery Comm'n v. Tran, 151 F.3d 339, 342 (5th Cir. 1998) ("Under § 523(a)(4), 'fiduciary' is limited to instances involving express or technical trusts.") (citing Chapman v. Forsyth, 43 U.S. (2 How.) 202 (1844)). Thus, a fiduciary-type relationship stemming from a constructive trust fails to satisfy § 523(a)(4). See id.

Whether a trust gives rise to the kinds of fiduciary obligations referred to in § 523(a)(4) is a question of federal law. See Angelle v. Reed (In re Angelle), 610 F.2d 1335, 1341 (5th Cir. 1980). Thus, a state court's statement that a relationship is "fiduciary in nature" is not determinative. See id. Indeed, we have noted that the concept of fiduciary as that term is used in § 523(a)(4) "is narrower than it is under the general common law." Tran, 151 F.3d at 342.

With this framework in mind, we conclude that Radcliffe has failed to prove the existence of a fiduciary relationship under § 523(a)(4). It is true, as Radcliffe argues, that "[t]he relationship of husband and wife ordinarily is a fiduciary

5

relationship." Bohn v. Bohn, 420 S.W.2d 165, 170 (Tex. Civ. App.--Houston [1st Dist.] 1967, writ dism'd). However, in Bohn, the Texas Court of Civil Appeals made clear that any trust resulting from such a relationship was constructive in nature: "An unfair transaction between a confider and a confidant or fiduciary, at least where the confidence is induced by a fiduciary relationship between the parties, gives rise to a constructive trust in respect of any unjust enrichment of the confidant or fiduciary." Id. (internal quotation marks omitted). Further, Texas law imposes no "trust-like duties" on Atherton that are essential to a finding of non-dischargeability under § 523(a)(4). See Tran, 151 F.3d at 342-43 (stating that "to meet the requirements of § 523(a)(4), a statutory trust must (1) include a definable res and (2) impose 'trust-like' duties"); Angelle, 610 F.2d at 1341. We therefore affirm on this issue.

## B. Section 523(a)(2) and (a)(6)

Radcliffe next argues that the $75,000 award intended to compensate her "for the denial of her rightful share of community property and income," and the $25,000 award for "acts of malice" are non-dischargeable under § 523(a)(2), (a)(4), and (a)(6).

Radcliffe does not assert the breach of any fiduciary duty other than that between spouses; we therefore conclude, for the same reasons as discussed above, that the bankruptcy court properly determined that § 523(a)(4) does not bar the discharge of these debts.

We therefore concentrate on § 523(a)(2) and (a)(6). These

6

provisions provide that a discharge does not discharge an individual debtor from any debt–

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial statement; [or]

. . . .

> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

We consider § 523(a)(6) first. In support of her argument that § 523(a)(6) applies to bar discharge of the debts, Radcliffe relies on several findings by the state trial court. Specifically, Radcliffe relies on the state court's findings that: (1) $270,298 was transferred to Paradigm Financial Group, Inc., (2) these funds were under the sole control and management of Atherton, (3) the transfer during the divorce "was done to deny [Radcliffe] . . . her rightful share of community property and income," and (4) these were "acts of malice."

Radcliffe argues that the bankruptcy court erred in failing to give preclusive effect to these findings. According to Radcliffe, the state court findings are (1) essential to the issues in the present proceeding; (2) the result of actual litigation; and (3) necessary to the resulting state court judgment. See Tober Saifer Shoe Co. v. Allman (In re Allman), 735 F.2d 863, 864-65 (5th Cir. 1984) (setting forth requirements for factual findings to be given preclusive effect). We agree with Atherton, however, that we cannot give preclusive effect to

7

these findings because the state court did not make "specific, subordinate, factual findings on the identical dischargeability issue in question," and because "the facts supporting the court's findings are [not] discernable from that court's record."  Dennis v. Dennis (In re Dennis), 25 F.3d 274, 278 (5th Cir. 1994).  As the bankruptcy court recognized, Radcliffe, for whatever reason, failed to introduce the record of the divorce court proceedings in this litigation.

Further, as the bankruptcy court noted, because the word "'willful' in (a)(6) modifies the word 'injury,' . . . nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 118 S. Ct. 974, 977 (1998).  The state court's finding of "acts of malice" does not necessarily satisfy this definition.  Under Texas law, the definition of "malice" is much broader than the intentional injury required by Kawaauhau. See Lone Star Ford, Inc. v. Hill, 879 S.W.2d 116, 122 (Tex. App.--Houston [14th Dist.] 1994) (defining malice as "ill will, bad or evil motive, or such gross indifference to or reckless disregard of the rights of others as to amount to a willful or wanton act") (emphasis added) (internal quotation marks omitted); Likover v. Sunflower Terrace II, Ltd., 696 S.W.2d 468, 475 (Tex. App.--Houston [1st Dist.] 1985, no writ) (same).  the issue considered by the state divorce court, then, does not "encompass[] the same prima facie elements as the bankruptcy issue."  In re Dennis, 25 F.3d at 278.  In the end, we agree with the bankruptcy court that

8

"[t]he finding of malice by the State Court is simply not specific enough to allow this Court to conclude that the finding was in fact supported by the record and necessarily tried or that the Debtor acted with the intent to injure [Radcliffe]."

Similarly, the bankruptcy court did not err in concluding that § 523(a)(2) does not apply. Radcliffe's argument with respect to the actual fraud exception is essentially the same as her argument relating to § 523(a)(6); she claims that the state court's factual findings relating to Atherton's transaction with Paradigm Financial Group, Inc. "clearly conclude[] that Atherton participated in actual fraud."

To prove actual fraud under § 523(a)(2), Radcliffe must prove that: "(1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive [Radcliffe]; (4) that [Radcliffe] relied on such representations; and (5) that [Radcliffe] sustained losses as a proximate result of the representations." Recoveredge L.P. v. Pentecost, 44 F.3d 1284, 1293 (5th Cir. 1995) (internal quotation marks and footnote omitted); see Bank of Louisiana v. Bercier (In re Bercier), 934 F.2d 689, 692 (5th Cir. 1991).

Despite Radcliffe's protestations to the contrary, we agree with the bankruptcy court that the state divorce decree does not evidence any factual findings relating to the existence of a knowingly false statement by Atherton made to deceive Radcliffe, much less that Radcliffe relied on, and sustained losses because

9

of, that statement. Radcliffe introduced no evidence on this point except for the state divorce decree; we therefore find no merit to her claim that § 523(a)(2) bars discharge of any debt owed her by Atherton.

## C. Section 523(a)(5)

"Section 523(a)(5) exempts from discharge any debt owed to a former spouse or child for alimony, maintenance, or support." Joseph v. O'Toole (In re Joseph), 16 F.3d 86, 87 (5th Cir. 1994). Radcliffe argues on appeal that $59,215.44 allegedly owed her by Atherton relating to mortgage payments made on community property should be found to be non-dischargeable under this exception.

We disagree. First, we note that only $11,614.23 of this alleged debt is identifiable--$11,514.23 as the amount awarded to Radcliffe by reason of Atherton's failure to pay the mortgage payments that he was ordered to pay by the state court and $100 in attorneys' fees. The remainder, $47,101.81 according to Radcliffe, is not "in connection with a . . . divorce decree or other order of a court of record," and therefore does not fall within the § 523(a)(5) exception. 11 U.S.C. § 523(a)(5) (stating that to be non-dischargeable, debt must be in connection with court order or decree). Rather, it is simply the amount that Radcliffe claims to be owed in additional mortgage payments and other expenses paid by her on foreclosure of the community property. We agree with the bankruptcy court that "there is simply no basis whatsoever for this Court to conclude that [Atherton] has a § 523(a)(5) type obligation to pay [Radcliffe]

10

$47,701.81."

We are also unconvinced by Radcliffe's argument that any of the remainder of the debt relating to the mortgage payments is non-dischargeable under § 523(a)(5). As the bankruptcy court and Atherton's appellate brief note, the specifics of Radcliffe's argument on this point are unclear. Radcliffe implies that the state divorce decree characterized this debt as spousal support. As Atherton points out, however, "[w]hether a particular obligation constitutes alimony, maintenance, or support within the meaning of [§ 523(a)(5)] is a matter of federal bankruptcy law, not state law." Joseph, 16 F.3d at 87 (internal quotation marks omitted).

Instead, the debt can only be found to be non-dischargeable under the support exception if "the award itself reflects a balancing of the parties' financial needs." Id. at 88. Radcliffe did not introduce any evidence, other than the divorce decree, relating to the parties' financial needs. Atherton, however, did introduce evidence relating to Radcliffe's and his earning potential, physical condition, and educational background. The bankruptcy court, after considering this evidence, concluded that no part of this debt constituted a support award. We will not disturb this finding, as it is amply supported by the record. See id. (stating that bankruptcy court should consider, inter alia, the parties' earning power, relative business opportunities, educational background, and physical

11

condition to determine whether an award constitutes support).[2]

### D. Section 523(a)(15)

Lastly, Radcliffe challenges the bankruptcy court's conclusion that no debts owed Radcliffe by Atherton are non-dischargeable under § 523(a)(15). Under that provision, a discharge does not discharge any debt:

> not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless-
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such a business; or
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, a former spouse, or child of the debtor[.]

11 U.S.C. § 523(a)(15). Radcliffe has the initial burden of proof to show that § 523(a)(15) is applicable to the debt in question; the burden then shifts to Atherton to prove that one of the exceptions apply. See Gamble v. Gamble (In re Gamble), 143 F.3d 223, 226 (5th Cir. 1998). A bankruptcy court's finding that

---

[2] Radcliffe also appears to claim that the $20,000 award based on attorneys' fees is non-dischargeable under § 523(a)(5). We note that the state court awarded the attorneys' fees "to effect an equitable distribution of the estate of the parties," not as a support award. In any event, this claim fails for the same reason as the award based on the mortgage payments. The bankruptcy court's finding that, based on the O'Toole factors, the attorneys' fees award did not reflect a balancing of the parties' financial needs is amply supported by the record.

a debtor has proven that one of the exceptions applies is factual in nature; we can only reverse such a finding for clear error. See id.

The bankruptcy court concluded that Radcliffe had fulfilled her initial burden of showing that § 523(a)(15) facially applied to the debts in question, other than the $47,101.81 amount allegedly owed for additional mortgage expenses. After reviewing the record, the bankruptcy court then found that Atherton had met his burden of proving that he is unable to pay the debts from his disposable income and property.

We need not decide whether Radcliffe has met her initial burden with respect to the $47,101.81 amount or any of the other debts. It is clear from our independent review of the record that the bankruptcy court's factual finding that Atherton lacks the ability to pay the debts is not clearly erroneous. As the bankruptcy court noted, Atherton is unemployed, has no house, no car, no insurance, and no savings. We therefore hold that the bankruptcy court was not clearly in error in determining that Atherton lacks an ability to pay the debts, and thus that § 523(a)(15) does not bar dischargeability of the debts. See id.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the order of the district court affirming the bankruptcy court's order discharging all debts owed by Atherton to Radcliffe.

13